670 P.2d 969

**Gabriel GUITARD, Plaintiff,**

v.

**GULF OIL CO., Defendant and Third Party Plaintiff/Appellant,**

v.

**HARRISON WESTERN CORPORATION, Third Party Defendant/Appellee.**

**No. 5995.**

Court of Appeals of New Mexico.

Aug. 30, 1983.

Certiorari Denied Oct. 21, 1983.

McCullough, Grisham & Lawless, Stephen Lawless, Albuquerque, for plaintiff.

Keleher & McLeod, P.A., Charles A. Pharris, Paula Z. Hanson, Albuquerque, for Gulf Oil Co.

Poole, Tinnin & Martin, a Professional Corporation, Marshall G. Martin, Judy K. Kelley, Albuquerque, for Harrison Western Corp.

## OPINION

NEAL, Judge.

This appeal raises issues concerning indemnity agreements, our anti-indemnity statute, NMSA 1978, § 56–7–2(A), and *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). The specific issue is whether § 56–7–2(A) bars Gulf Oil Company's (Gulf) third-party complaint against Harrison Western Corporation (Harrison Western).

Gulf was in charge of a mining project near Grants. Harrison Western was a contractor under Gulf. While engaged in this project one of Harrison Western's employees, Gabriel Guitard, was injured when a load of steel beams fell off a mining conveyance. Guitard is receiving workmen's compensation benefits from Harrison Western as a result of this accident.

Guitard filed this suit against Gulf and Eimco Machinery Company (Eimco). His complaint generally alleges failure to inspect and maintain the mining conveyance, and failure to warn of defects. Gulf then filed a "Third-Party Complaint for Indemnification, Contribution and Damages", against Harrison Western. The third-party complaint alleged that Harrison Western was negligent and was based on a Construction and Development Contract, entered into by Gulf and Harrison Western, which included an indemnity provision.

Eimco was subsequently granted summary judgment. That issue is not before us. Harrison Western moved for summary judgment against Gulf arguing that under § 56–7–2(A) the indemnity agreement was void. The trial court granted the motion and Gulf appeals.

We reverse.

We discuss (1) summary judgment; (2) whether Harrison Western was properly granted summary judgment based on § 56–7–2(A); and (3) the effect of *Bartlett* on third-party practice.

1. *Summary judgment*

■ Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. NMSA 1978, Civ.P.R. 56(c) (Repl.Pamp.1980); *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

2. *Section 56–7–2(A)*

Our anti-indemnity statute, § 56–7–2(A), states:

A.   Any agreement, covenant or promise contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purports to indemnify the indemnitee against loss or liability for damages, for:

(1) death or bodily injury to persons; or

(2) injury to property; or

(3) any other loss, damage or expense arising under either Paragraph (1) or (2) or both; or

(4) any combination of these, arising from the sole or concurrent negligence of the indemnitee * * * or the agents or employees of the indemnities or any independent contractor who is directly responsible to the indemnitee, or from any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, is against public policy and is void and unenforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978].

Harrison Western contends that under its contract with Gulf and under § 56–7–2(A) there is no possible outcome which would require it to indemnify Gulf and, therefore, summary judgment was correct. If Gulf is solely negligent, then under the development contract Gulf has no right of indemnity. If Gulf is not negligent, Gulf will not have to pay Guitard and no right of indemnity will arise. The third possibility is that Gulf will be concurrently negligent. Harrison Western contends that under the plain meaning of § 56–7–2(A) if Gulf is concurrently negligent then the indemnity agreement is void and unenforceable.

Is the indemnity agreement between Gulf and Harrison Western void and unenforceable? Section 56–7–2(A), states that any agreement which purports to indemnify the indemnitee for damages "arising from the sole or concurrent negligence of the indemnitee" is void and unenforceable. The language "arising from the sole * * * negligence of the indemnitee" presents no problem. This simply means that the well or mine owner cannot contract away liability for his own negligence. Section 56–7–2(A), also states that indemnification for injuries or death "arising from the * * * concurrent negligence of the indemnitee" is not permitted. What did the Legislature mean by this language?

Harrison Western contends that if Gulf is at all negligent then the indemnity agreement is void. Gulf contends that the language means only that Gulf cannot contract away liability for its own percentage of negligence.

In *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351 (Wyo.1978) the Wyoming Supreme Court considered an argument almost identical to Harrison Western's and an anti-indemnity statute almost identical to ours. The relevant part of the Wyoming anti-indemnity statute considered in *Emerson,* Section 30–28.3, W.S.1957, C.1967, 1975 Cum.Supp., read:

Provisions for indemnity in certain contracts—Invalidity.—All agreements and all covenants or promises contained in, collateral to, or affecting any agreement pertaining to any well for oil, gas, or water, or mine for any mineral and which

purport to indemnify the indemnitee against loss or liability for damages for

(a) Death or bodily injury to persons, or

(b) Injury to property, or

(c) Any other loss, damage, or expense arising under either (a) or (b) from ·

(i) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or

(ii) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are against public policy and are void and enforceable. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Workmen's Compensation Law of this state.

In *Emerson,* the owner, Mountain Fuel Supply Company (Mountain Fuel), entered into an indemnity agreement with a contractor, Emerson Well Service (Emerson). An Emerson employee was killed while working on a Mountain Fuel project and the employee's estate filed a wrongful death suit against Mountain Fuel. Mountain Fuel then demanded indemnification from Emerson based on their agreement. Emerson filed a declaratory judgment action seeking a declaration that the indemnity agreement was void and unenforceable. Summary judgment was entered for Emerson and Mountain Fuel appealed.

The Wyoming Supreme Court reversed the summary judgment:

We hold that the clear language of the statute voids and makes unenforceable any agreement *to the extent that it seeks to indemnify an indemnitee for his own negligence*—regardless of the character of the negligence sought to be protected. (Emphasis added.)

578 P.2d 1357.

The *Emerson* interpretation has subsequently been applied in two cases: *Reding v. Texaco, Inc.,* 598 F.2d 513 (9th Cir.1979); and *Heckart v. Viking Exploration, Inc.,* 673 F.2d 309 (10th Cir.1982). Both of these cases considered the Wyoming anti-indemnity statute, and *Emerson* was applied to somewhat different facts. In *Heckart,* the Tenth Circuit, following *Emerson,* noted that the Wyoming legislature clarified the anti-indemnity statute in 1977, adding the words "to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence."

■ We follow *Emerson* and hold that the language in § 56–7–2(A) which makes void and unenforceable any agreement which purports to indemnify an indemnitee for injuries or death "arising from the ... concurrent negligence of the indemnitee" means only that the indemnitee cannot contract away liability for his own percentage of negligence. This interpretation, compared to that urged by Harrison Western, is better for a number of reasons.

Harrison Western's interpretation, which has not been adopted by any court, is that if Gulf is even 1% negligent then the indemnity agreement is void. Assume that Harrison Western is 99% negligent. Were we to adopt Harrison Western's interpretation, Harrison Western, despite its express contract to indemnify Gulf, and the fact that Harrison Western was 99% negligent, would have to pay only workmen's compensation benefits. Gulf would be liable for 100% of the damages even though it was only 1% negligent. This result would be unfair.

This result would also be inconsistent with *City of Artesia v. Carter,* 94 N.M. 311, 610 P.2d 198 (Ct.App.), *cert. denied,* 94 N.M. 628, 614 P.2d 545 (1980), which held that when an employer has expressly contracted to indemnify a third party, the exclusivity provisions of the Workmen's Compensation Act do not relieve the employer of his obligation to indemnify the third party.

■ Our interpretation furthers two important public policies. First, the public policy behind § 56–7–2(A), is to promote safety. The indemnitee, usually the operator of the well or mine, will not be allowed

to delegate to subcontractors his duty to see that the well or mine is safe. Our interpretation furthers the public policy behind the statute, which is to promote safety. Both the operator and the subcontractor will have incentive to monitor the safety of the operation knowing that they will be responsible for their respective percentage of negligence. Under Harrison Western's result the subcontractor might be careless knowing that if the operator were even 1% negligent, the subcontractor's liability would be limited to workmen's compensation, with the operator liable for everything else.

Our interpretation also furthers a second important public policy—freedom of contract. Harrison Western entered into a contract with Gulf. Our holding enforces the loss distribution agreed to by the parties. As stated in *City of Artesia:*

> Great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties.

Finally, because our holding requires both Gulf and Harrison Western to be responsible for their own percentage of negligence, our result is consistent with *Bartlett.*

We turn now to the indemnity agreement made by the parties. It states:

> Contractor [Harrison Western] agrees to be responsible for and to indemnify and save harmless the Owner [Gulf] from all loss or damage and any or all claims and suits, and costs of defending same, arising by reason of accidents, injuries (including death) or damage to any persons or property in connection with the Work performed by Contractor * * * Contractor shall not be liable for any loss, damage or claims which are determined to be due to the sole negligence of Owner.

Does this agreement require Harrison Western to indemnify Gulf for Gulf's negligence? If so, it would be unenforceable to the extent that it required Harrison Western to indemnify Gulf for Gulf's negligence under *Emerson* and our holding today.

■ The agreement provides that "Contractor [Harrison Western] agrees to be re-sponsible for and to indemnify * * * [Gulf] * * * [for damages] to any persons or property *in connection with the Work performed by Contractor * * * "* (Emphasis added.) We interpret the emphasized language to mean that the parties intended that Harrison Western indemnify Gulf only for Harrison Western's percentage of negligence. The indemnity agreement is enforceable.

#### 3. *Bartlett*

■ *Bartlett* holds that in a comparative negligence case fault may be allocated to a tortfeasor not in the case. Harrison Western contends that under *Bartlett* the jury may allocate a percentage of fault to it without its participation in the suit. Gulf will be allocated a percentage of negligence, and Gulf will have to pay only for its own percentage of negligence. Therefore, Harrison Western argues, indemnity will not come into play.

The present case presents a different situation from *Bartlett.* In *Bartlett* fault was allocated to a phantom driver, not in the lawsuit. Here Harrison Western has contracted to participate in a lawsuit arising from accidents in connection with work performed by it.

Taken to its logical conclusion Harrison Western's argument would mean that in a negligence action a party could never be brought in under NMSA 1978, Civ.P.R. 14 (Repl.Pamp.1980). A defendant sought to be brought in by a third-party plaintiff could argue that under *Bartlett* its participation would not be necessary because a percentage of negligence could be allocated to it without its participation in the suit. *Bartlett* did not intend such sweeping changes in third-party practice. In the present case *Bartlett* is important only insofar as it affects relations between Gulf, Harrison Western and Guitard. Each will be assigned a percentage of negligence by the jury.

■ Harrison Western also argues that it was not named in Guitard's complaint and, therefore, there can be no possible recovery against it. Guitard, as an employ-

ee of Harrison Western, could not name Harrison Western. Between Guitard and Harrison Western, Guitard could only receive workmen's compensation benefits. Also, a defendant is not bound by the plaintiff's selection of parties. Rule 14, gives a defendant the right, in certain situations, to name a party not named by the plaintiff.

Because we hold that § 56–7–2(A), does not void the indemnity agreement Harrison Western will be responsible for its percentage of negligence, if any. The allocation of negligence is a fact issue for a jury. Also, Gulf has claimed that Harrison Western may be liable to it for costs. The indemnity agreement is enforceable and under it Harrison Western may be responsible for costs.

The summary judgment in favor of Harrison Western is reversed.

IT IS SO ORDERED.

HENDLEY and DONNELLY, JJ., concur.