755 P.2d 606

George MARTINEZ and Pauline Martinez, Individually and as Next Friends of Stephen Martinez, A Minor, Plaintiffs–Appellants,

v.

FIRST NATIONAL BANK OF SANTA FE, as Personal Representative of the Estate of Leonard E. Alkire, M.D., Defendant–Appellee.

No. 8732.

Court of Appeals of New Mexico.

Aug. 27, 1987.

Certiorari Quashed May 26, 1988.

Catherine Gordon, Duhigg, Cronin & Spring, Albuquerque, for plaintiffs-appellants.

Bruce D. Black, Campbell & Black, P.A., Santa Fe, for defendant-appellee.

## OPINION

ALARID, Judge.

The court has determined that the original opinion filed in this case on July 30, 1987 should be withdrawn and the following substituted.

Plaintiffs appeal from a judgment of the trial court in a medical malpractice suit which compared fault among the treating physician (Dr. Alkire), the driver of a pick-up truck in which Stephen Martinez was a passenger, and Stephen Martinez. The jury returned a verdict awarding $115,000 to plaintiffs, with fault apportioned at 20% to Stephen Martinez, 35% to Dr. Alkire and 45% to Juan Martinez, a non-party who was the driver of the truck.

Plaintiffs do not contest apportionment of fault between Stephen and Dr. Alkire. They do, however, claim that the trial court erred in (1) instructing the jury to consider the comparative negligence of Juan Martinez, and (2) excluding language from the jury instruction on proximate cause. Reversed and remanded.

## FACTS

On August 30, 1983, Stephen Martinez, then 13 years old, was riding in the bed of his cousin Juan Martinez' pickup truck when the truck overturned, pinning Stephen underneath. Although Stephen was knocked unconscious when he was thrown out of the pickup, he was not seriously injured; and he suffered a fractured dislocation of his right elbow. His parents took him to Espanola Hospital where he was treated by Dr. Alkire, a licensed orthopedic specialist.

Stephen told Dr. Alkire that he had injured his arm when he fell off his bicycle. Dr. Alkire ordered x-rays and determined that Stephen had suffered a simple dislocation with no fracture. The doctor attempted to reduce the dislocation by "popping" the bones of the elbow back into place. After placing a plaster cast on the boy's arm, Dr. Alkire ordered additional x-rays. He did not order x-rays prior to casting Stephen's arm in order to insure that the manipulation had been successful; nor did he order x-rays four weeks later when he removed Stephen's cast.

Stephen continued to suffer pain. At all times, Dr. Alkire assured plaintiffs that the arm was healing well. Uncertain of that prognosis, Stephen's parents took him to the Santa Fe Public Health Service Hospital where he was referred to an orthopedic surgeon, Dr. Michael Rothman.

On November 2, 1983, Dr. Rothman examined Stephen's arm and took additional x-rays. He requested the x-rays taken at Espanola Hospital, which readily indicated to him that the dislocation reduction had been unsuccessful. The hospital x-rays also showed three fractured bones, as well as torn muscles and ligaments.

It was Dr. Rothman's expert opinion that the time delay in removing the bone chips was responsible for extensive damage to the joint surfaces in the elbow. Neither subsequent surgery, therapy nor a custom-made splint have been successful in returning to Stephen the full use of his arm.

After treatment was rendered by Dr. Alkire, and prior to suit, Dr. Alkire died and the First National Bank of Santa Fe was joined as the personal representative of his estate.

## DISCUSSION

### a. *Enhanced Injury*

This case requires us to discuss the traditional concepts of causation in tort actions. While cause in fact includes every event leading to Stephen's initial visit with Dr. Alkire, it is not necessarily the legal or proximate cause of the medical malpractice of which plaintiffs complained. The law requires the parties to separate the limitless events which lead to an occurrence and establish the legal significance of a defendant's acts by showing that defendant was the proximate or direct cause of plaintiff's injuries. *See generally* W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 41 (5th ed. 1984).

The trial court gave the jury a special verdict pursuant to UJI Civ. 13-2220, indicating that if the jury found negligence on the part of Juan Martinez, Stephen Martinez and Dr. Alkire, it could compare the

percentage of total liability among the three individuals. Under the facts of this case, it was error to permit the jury to apportion damages between Juan Martinez and Dr. Alkire. The alleged negligent acts of Dr. Alkire purportedly aggravated or enhanced the preexisting injury of Stephen. Juan Martinez and Dr. Alkire were not, however, concurrent tortfeasors. *See Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 N.M. 301, 336 P.2d 1057 (1959); *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779 (Ct.App.1983).

The proximate cause of an injury must be an act which actually aids in bringing about an injury; it need not be the last or nearest act, nor need it be the sole cause of the injury. *LeBlanc v. Northern Colfax County Hosp.*, 100 N.M. 494, 672 P.2d 667 (Ct.App.1983). *See also* SCRA 1986, UJI Civ. 13–305. Thus, when the negligent acts of more than one person combine to proximately cause an injury, it is a question of fact to determine the amount or percentage of comparative negligence of each person. *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981). Under comparative negligence, fault may be allocated between defendant and a tortfeasor not joined as a party to the action, so long as evidence is presented to establish that the absent party was negligent and fault can be fairly distributed in proportion to the injury caused by the act of each joint tortfeasor. *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.1982); *Guitard v. Gulf Oil Co.*, 100 N.M. 358, 670 P.2d 969 (Ct.App.1983). Moreover, each tortfeasor is responsible only for his share of the fault, *see Duran v. General Motors Corp.*, and the right to contribution among concurrent tortfeasors does not exist in our pure comparative negligence system. *Tipton v. Texaco, Inc.*, 103 N.M. 689, 712 P.2d 1351 (1985).

The development of New Mexico law on comparative negligence has thus far been limited to cases where joint tortfeasors have combined to cause a single injury to a plaintiff. *But see Vaca v. Whitaker*, 86 N.M. 79, 519 P.2d 315 (Ct.App.1974) (where judgment in the first action against one tortfeasor covers all injuries sustained by plaintiff, including those attributable to a negligent physican in treating the injured person, plaintiff is barred from recovering damages in a subsequent suit).

How then are the courts to apportion fault between the tortfeasor who has created plaintiff's injury and a subsequent tortfeasor who has aggravated the original injury? As specifically applied to the facts of this case, how do the principles of *Bartlett* and its progeny combine to relate comparative negligence among a plaintiff, a non-party original tortfeasor and a successive tortfeasor charged with medical malpractice in treating plaintiff's original injury?

Plaintiffs and defendant agree that Juan Martinez and Dr. Alkire were not concurrent tortfeasors. Defendants argue, however, that Dr. Alkire's estate is not liable for the entire injury to Stephen and that fairness principles require apportioning liability in accordance with respective fault. *See Scott v. Rizzo.* Indeed, the *Restatement (Second) of Torts* § 879 comment b (1979), supports defendants position:

> [W]hen one of the tortfeasors causes one harm and the other causes another and distinct harm * * * [or] when one person causes a harm that is aggravated by another * * * each of the two tortfeasors is liable for the harm he causes. * * *

*See also Id.* §§ 881 and 433A (1986) and cases cited therein.

While defendant should not be liable in malpractice for Stephen's harm in the original injury, and while it follows that damages should be apportioned among those negligently contributing to the injury if that negligence was a proximate cause of the injury, it does not follow that damages should be apportioned to a non-party against whom negligence has not been established.

Defendant urges this court to affirm the percentage of fault attributable to Juan Martinez at trial and consider how Martinez' and Dr. Alkire's actions combined to create the condition of Stephen's elbow. We cannot do that without ruling that Juan

Martinez and Dr. Alkire were concurrent tortfeasors. *See Duran v. General Motors Corp.* (liability is based only on enhanced or additional injuries and the concurrent tortfeasor concept is not applicable). We have already rejected the notion that Juan Martinez and Dr. Alkire were concurrent tortfeasors; the injury Stephen sustained in the accident was separate and distinct from the enhancement of those injuries resulting from the alleged medical malpractice of Dr. Alkire. Defendant's reliance on *Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104 (Ct.App.1983), and *Jaramillo v. Fisher Controls Co.,* 102 N.M. 614, 698 P.2d 887 (Ct.App.1985), to support its theory of apportioning fault to Juan Martinez is misplaced. Even though those cases followed *Bartlett's* reasoning of apportionment, like *Bartlett,* they involved concurrent tortfeasors.

We agree with defendant that a negligent non-party tortfeasor may be liable to his plaintiff, and we can even assume that he may be liable for the additional harm caused the victim by a physician negligently treating the victim if negligent treatment is the foreseeable result of the original injury, *see Aubuschon v. Witt,* 412 S.W.2d 136 (Mo.1967), but his negligence must first be established. Plaintiffs chose not to sue Juan Martinez. We noted nothing in the record which would have precluded defendant from joining Martinez as a third party defendant and thus proving his negligence if, indeed, there was any to be proved. *See Guitard v. Gulf Oil Co.,* 100 N.M. at 363, 670 P.2d at 974 ("a defendant is not bound by the plaintiff's selection of parties"). *See also Tipton v. Texaco, Inc.,* 103 N.M. at 693, 712 P.2d at 1355 ("the rules of third-party practice and joinder of missing parties, whether those parties be permissive or necessary, [will] be liberally applied when comparative fault or liability of multiple parties surfaces in the pleadings"). It is notable that defendant's answer alleged, as an affirmative defense, that plaintiff's damages resulted from both plaintiff's contributory negligence and "acts or omissions" of others.

During the settling of jury instructions, the trial court determined that the standard of care that the jury should apply to the parties also applied to Juan Martinez as the driver of the truck. The only reference at trial to Martinez' driving was Stephen's testimony: "[Juan Martinez] was driving too fast. I guess [he] lost control of the steering wheel at a curve and [the truck] just flipped over." From that testimony the trial court deduced, apparently as a matter of law, that the jury could find negligence and apportion damages against Martinez. That evidence, standing alone, does not sustain the trial court's conclusion that the jury should be instructed on Martinez' failure to use ordinary care. *See Bowman v. Incorporated County of Los Alamos,* 102 N.M. 660, 699 P.2d 133 (Ct. App.1985) (conjecture is insufficient to establish negligence of a third person). A party is only entitled to a jury instruction on a matter which is supported by the evidence. *Reed v. Styron,* 69 N.M. 262, 365 P.2d 912 (1961). For the same reasons, it was error to include Juan Martinez in the special verdict form. We will not affirm a verdict based on erroneous instructions. *Salinas v. John Deere Co.,* 103 N.M. 336, 707 P.2d 27 (Ct.App.1984). "But for" the fact that Juan Martinez drove the truck does not provide a causal connection between the driving and Stephen's injuries. *See* UJI Civ. 13–1616. There was no evidence on which to base a verdict that Juan Martinez was the proximate cause of Stephen's injuries, and it was reversible error to consider any negligence of Juan Martinez in apportioning liability or damages in this medical malpractice action.

b. *Instruction as to Proximate Cause*

■ Finally, plaintiffs argue that the trial court erred in excluding the bracketed portion of NMSA 1978, UJI Civ. 3.8 (Repl. Pamp.1980):

Proximate Cause.

The proximate cause of an injury is that which in a natural and continuous sequence * * * produces the injury, and without which the injury would not have occurred. [It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other

cause acting at the same time, which in combination with it, causes the injury].

In *Armstrong v. Industrial Elec. & Equip. Serv.*, 97 N.M. 272, 639 P.2d 81 (Ct.App.1981), we held that in tort cases where comparative negligence is in issue, the jury ordinarily should be instructed on the bracketed language of UJI Civ. 3.8. It was particularly important here where the jury was instructed on the question of Juan Martinez' negligence which was never supported by the evidence. Having been given no further instructions on proximate cause, the jury was unable to fairly apportion damages under the facts of this case, even if it had not been error to include Juan Martinez in the first place. Here, plaintiffs were prejudiced by the trial court's failure to include the additional language. In addition, we note that SCRA 1986, 13–305, effective January 1, 1987, has included the applicable language, without brackets, thereby making its use mandatory in negligence actions. We need not address it further here, since jury instructions in a new trial would require inclusion of the language of the new rule.

## CONCLUSION

The trial court is reversed and the case is remanded for a new trial. Plaintiffs are awarded their costs on appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.