902 P.2d 1025

**Irene LUJAN, individually and as next friend of her minor son, Martin Lujan, Plaintiff–Petitioner,**

v.

**HEALTHSOUTH REHABILITATION CORPORATION, Healthsouth of New Mexico, Inc., and Mercedes Chavez, Defendants–Respondents.**

**No. 22435.**

Supreme Court of New Mexico.

Aug. 28, 1995.

Kim E. Kaufman, Albuquerque, the Revo Law Firm, M. Terrence Revo, and Allan L. Knighten, Albuquerque, for petitioner.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alice Tomlinson Lorenz and Jill Burtram, Albuquerque, for respondents.

## OPINION

RANSOM, Justice.

1. Irene Lujan sued Nancy Jaramillo for injuries that Lujan's son Martin sustained in a motorcycle collision with Jaramillo's automobile on January 27, 1990. In settlement of that suit, Lujan signed a release of claims in February 1991. In March 1993 Lujan sued Healthsouth Rehabilitation Corporation, Healthsouth of New Mexico, Inc., and Mercedes Chavez (collectively, "Healthsouth") for medical malpractice in connection with treatment of the femoral fracture that Martin suffered in the accident with Jaramillo. Healthsouth moved for summary judgment, arguing that the release signed by Lujan in settlement of her suit against Jaramillo barred her medical malpractice claims. The trial court granted Healthsouth's motion, and the Court of Appeals affirmed. *Lujan v. Healthsouth Rehabilitation Corp.*, 118 N.M. 691, 884 P.2d 847 (Ct.App.1994).

2. We granted Lujan's petition for certiorari and now hold that the general release of a named tortfeasor who causes injury requiring subsequent medical treatment does not as a matter of law bar an action by the releasor against the medical care provider for negligent treatment. We further conclude that the general release executed by Lujan does not purport to bar her claims against a successive tortfeasor whose liability is limited to an injury enhancement *arising out of the subsequent malpractice.* We therefore reverse.

3. *Facts and Proceedings.* The release at issue here provides, in part:

IN CONSIDERATION of the sum of One Hundred Thousand Dollars ($100,000) the receipt and sufficiency of which is hereby acknowledged by IRENE LUJAN, individually and as the mother, guardian, and next best friend of her minor son [ ] MARTIN LUJAN ... [hereinafter called "Releasors"], Releasor individually and for their heirs, executors, administrators and assigns does hereby forever release and discharge NANCY JARAMILLO, and her agents, servants, employees, representatives, insurance companies, attorneys, successors and assigns, and also any and all *other persons,* associates, or corporations, whether herein named or referred to or not, and *who together with the above-named parties may be jointly or severally liable* to the Releasors, or anyone else ·acting on behalf of or through the derivative rights of the Releasors, [hereinafter "Releasee"] of and from any and all claims, causes of action, rights suits, covenants, contracts, agreements,. judgments and demands of whatsoever kind or nature that

Releasors have or may have against Releasee *for damages* to Releasors' person or property *arising out of an accident on or about January 27, 1990,* at the intersection of Blake and Tapia, SW, Albuquerque, New Mexico.

(Emphasis added). After executing this release, Lujan sued Healthsouth, alleging that in March 1990 Healthsouth employee Mercedes Chavez improperly manipulated Martin's left leg, refracturing the original femoral fracture site. Healthsouth moved for summary judgment, arguing that because *Jaramillo* might be "jointly or severally liable" with Healthsouth for Martin's *March 1990 injuries,* the general release barred Lujan's malpractice claims.

4. The trial court found that the release was unambiguous as a matter of law, determined that Lujan's malpractice claims were included within the terms of the release, and granted Healthsouth's summary judgment motion. The Court of Appeals affirmed, holding that the release barred Lujan's malpractice claims because *Healthsouth* may have been "severally liable" with Jaramillo for malpractice damages that "arose out of" Martin's accident with Jaramillo. *Lujan,* 118 N.M. at 693, 884 P.2d at 849. We agree that the dispositive issue here is not whether *Jaramillo* was jointly or severally liable for the March 1990 enhanced injury. Jaramillo's liability for that claim undisputedly was settled. The issue is whether *Healthsouth* falls within the category of "other person" who together with Jaramillo may be "jointly or severally liable" to Lujan for injuries *arising out of the January 1990 accident.*

5. *General release of a tortfeasor who causes an injury that requires medical treatment does not as a matter of law also release an allegedly negligent medical care provider.* Lujan argues that because Jaramillo can no longer be liable with Healthsouth for the enhanced injury to Martin's leg, the trial court erred as a matter of law when it concluded that the release included Healthsouth. Healthsouth counters that Jaramillo may be exposed to further claims or to harassment as a witness or deponent if Lujan is allowed to sue Healthsouth for negligent treatment of Martin's injuries. Healthsouth contends that

because Lujan agreed to release "all other persons ... who together with [Jaramillo] may be jointly or severally liable to [Lujan]," the trial court correctly found that Healthsouth was a third-party beneficiary of the release. Healthsouth relies for support on *Martinez v. First National Bank of Santa Fe,* 107 N.M. 268, 755 P.2d 606 (Ct.App.1987) (suggesting fault may be apportioned between negligent physician and initial tortfeasor), *cert. quashed,* 107 N.M. 308, 756 P.2d 1203 (1988).

6. *The Martinez decision.* In *Martinez* the Court of Appeals considered whether the trial court erred by instructing the jury in a medical malpractice action that when assessing the defendant physician's liability for causing an enhanced injury, it could apportion fault between the physician and the driver of a pickup truck whose alleged negligence caused the plaintiff's original injury. *Id.* at 269–70, 755 P.2d at 607–08. In deciding this issue, the Court concluded that while a physician "should not be liable in malpractice for [a plaintiff's] harm in the original injury, ... damages *should be apportioned* among those negligently contributing to the [enhanced] injury if that negligence was a proximate cause of the injury." *Id.* at 270, 755 P.2d at 608 (emphasis added). The Court ultimately held that because trial testimony was insufficient to establish the negligence of the pickup driver, the trial court erred when it instructed the jury that it could apportion fault between the driver and the physician. *Id.* at 271, 755 P.2d at 609. The Court strongly suggested, however, that if the negligence of the pickup truck driver had been established, the jury properly could have apportioned his fault with that of the treating physician and then could have reduced the physician's liability for the plaintiff's enhanced injury in proportion to the driver's fault. *Id.*

7. Healthsouth contends that in order for Jaramillo to receive the benefit of the release she obtained from Lujan, we must construe the release to bar Lujan's malpractice claims. Healthsouth reasons that in defending against a malpractice suit by Lujan, it would be obligated to join Jaramillo to establish her negligence and reduce its own liability. *See*

*Tipton v. Texaco*, 103 N.M. 689, 693, 712 P.2d 1351, 1355 (1985) ("[T]he rules of third-party practice and joinder of missing parties ... [will] be liberally applied when comparative fault or liability of multiple parties surfaces in the pleadings."); *Guitard v. Gulf Oil Co.*, 100 N.M. 358, 363, 670 P.2d 969, 974 (Ct.App.) ("[A] defendant is not bound by the plaintiff's selection of parties."), *cert. denied*, 100 N.M. 327, 670 P.2d 581 (1983). We thus begin our assessment of Healthsouth's argument that the release must be construed to bar Lujan's malpractice claims by revisiting the suggestion in *Martinez* that a jury may apportion fault between a negligent original tortfeasor and a subsequently negligent physician for purposes of determining the amount of the latter's liability for enhancement of the original injury.

■ 8. *Fault of an original tortfeasor may not be apportioned for purposes of reducing the liability of a successive tortfeasor whose negligence caused an enhanced injury.* When the negligent acts or omissions of two or more persons combine to produce a single injury, the law considers those persons concurrent tortfeasors. Under traditional principles of causation, if the plaintiff could not prove what portion of a single injury each of two concurrent tortfeasors had caused, that plaintiff could not recover damages from either wrongdoer. *See, e.g., Tucker Oil Co. v. Matthews*, 119 S.W.2d 606, 608 (Tex.Civ. App.1938) (directing verdict for one of several defendants who had polluted stream because plaintiff could not prove how much damage was caused by that defendant). *See generally* 3 Fowler V. Harper et al., *The Law of Torts* § 10.1, at 23–29 (2d ed. 1986) (describing origins of rule of joint and several liability in cases involving concurrent tortfeasors).

9. Rather than permit wrongdoers to escape without liability, American jurisdictions, including New Mexico, adopted the rule that each concurrent tortfeasor is jointly and severally liable for the entire harm. *See Crespin v. Albuquerque Gas & Elec. Co.*, 39 N.M. 473, 478, 50 P.2d 259, 262 (1935) (upholding instruction informing jury that if defendant's negligence had combined and united with negligence of another to proximately cause plaintiff's injury, plaintiff is entitled to recover entire damages from defendant); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 47, at 328 (5th ed. 1984). The rule has been expressed as follows: "Where two or more causes combine to produce ... a single result, *incapable of any reasonable division*, each may be a substantial factor in bringing about the loss, and if so, each is charged with all of it." *Id.* § 52, at 347 (emphasis added).

■ 10. New Mexico has abolished joint and several liability in cases involving concurrent tortfeasors. *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). In *Bartlett* the Court of Appeals noted that the rule holding concurrent tortfeasors jointly and severally liable rested on the "concept that a plaintiff's *injury* is 'indivisible.'" *Id.* 98 N.M. at 157, 646 P.2d at 584 (emphasis added). Relying on *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), the Court concluded that "[j]oint and several liability is not to be retained in our pure comparative negligence system on a theory of one indivisible *wrong*." *Bartlett*, 98 N.M. at 158, 646 P.2d at 585 (emphasis added).[1]

■ 11. Here Jaramillo and Healthsouth are not concurrent tortfeasors; they are suc-

1. In *Scott* this Court rejected the "all or nothing" rule of contributory negligence in favor of pure comparative negligence. 96 N.M. at 687, 634 P.2d at 1239. We rejected contributory negligence because of "the undeniable inequity and injustice in casting an entire accidental loss upon a plaintiff whose negligence combined with another's negligence in causing the loss suffered, no matter how trifling plaintiff's negligence might be." *Id.* at 689, 634 P.2d at 1241. As implied by the Court of Appeals in *Bartlett*, if a factfinder fairly can assess liability for plaintiff's single and causally-indivisible injury in propor-

tion to the relative fault of plaintiff and a single defendant, it follows that the factfinder fairly can assess liability for a causally-indivisible injury in proportion to the relative fault of multiple defendants whose separate acts or omissions had united to produce the single result. *See Bartlett*, 98 N.M. at 158, 646 P.2d at 585. Thus, although seemingly irrelevant to the question whether concurrent tortfeasors should be held jointly and severally liable, the decision to adopt comparative negligence in *Scott* provided the theoretical basis for the abolition of this form of liability.

cessive tortfeasors by reason of divisible and causally-distinct injuries. In defining tortfeasors as successive rather than concurrent, courts have considered several other factors that are relevant, including: 1) the identity of time and place between the acts of alleged negligence; 2) the nature of the cause of action brought against each defendant; 3) the similarity or differences in the evidence relevant to the causes of action; 4) the nature of the duties allegedly breached by each defendant; and 5) the nature of the harm or damages caused by each defendant. *See, e.g., Voyles v. Corwin*, 295 Pa.Super. 126, 441 A.2d 381, 383 (1982) (quoting William L. Prosser, *Handbook of the Law of Torts* § 46 n. 2 (4th ed. 1971)). Even if we accept Healthsouth's characterization of the injury caused by its alleged negligence as an aggravation, the original injury and the subsequent enhancement of that injury are separate and causally-distinct injuries. Thus the wrongs of Jaramillo and Healthsouth are not concurrent but successive.

12. *Concurrent tortfeasor concept not applicable.* A *Bartlett*-style apportionment of fault is inapplicable to a successive and distinct enhancement of an original injury at the hands of a subsequently negligent physician. This is apparent both by reference to the text of the *Bartlett* decision and to subsequent decisional law defining the scope of *Bartlett.* The *Bartlett* decision did not mandate fault-based apportionment between all tortfeasors. In *Bartlett* the court carefully confined the issue presented to "whether, in a comparative negligence case, a concurrent tortfeasor is liable for the entire damage *caused by concurrent tortfeasors.*" 98 N.M. at 154, 646 P.2d at 581 (emphasis added).

13. In *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779 (Ct.App.1983), *cert. quashed*, 101 N.M. 555, 685 P.2d 963 (1984), *and overruled on other grounds by Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 902 P.2d 54 (1995), the Court of Appeals rejected the application of concurrent-tortfeasor principles to a crashworthiness claim involving a second collision that produced an enhanced injury. The Court adopted the rule that "a claimant in an enhanced injury case must prove that the defective design caused injuries over and above those which otherwise would have been sustained, must demonstrate the degree of 'enhancement', and 'must offer proof of what injuries, if any, would have resulted [in any event].'" *Id.*, 101 N.M. at 749–50, 688 P.2d at 786–87 (quoting *Huddell v. Levin*, 537 F.2d 726, 737 (3d Cir.1976)). "Because crashworthiness liability is based only on enhanced or additional injuries, the concurrent tortfeasor concept is not applicable." *Id.* Similarly, as we demonstrate below, Healthsouth's liability, if any, would be limited to the enhanced injuries caused by its negligence.

14. *Successive tortfeasor ultimately is responsible for entirety of enhanced injury.* When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm. *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876, 877 (1944); *see also* Keeton et al. § 44, at 309 ("It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg."). Thus, premised upon the concept that the original tort is a proximate cause of the harm attributable to negligent treatment, courts have held the original tortfeasor liable both for the original injury and for the harm caused by negligent medical treatment. *See* V. Woerner, Annotation, *Civil Liability of One Causing Personal Injury for Consequences of Negligence, Mistake, or Lack of Skill of Physician or Surgeon*, 100 A.L.R.2d 808, 813–20 (1965); *see also* Restatement (Second) of Torts § 457 cmt. a, at 496–97 (1964) (stating that person liable for injury will also be liable for additional harm caused by negligent treatment).

15. New Mexico follows the general rule that an original tortfeasor will be held liable for the "concurrent or succeeding negligence of a third person which does not break the sequence of events." *Thompson v. Anderman*, 59 N.M. 400, 412, 285 P.2d 507, 514 (1955). Hence, if negligent treatment was the foreseeable result of the January 1990 collision, Jaramillo could have been held liable for the total harm suffered by Martin Lujan; both the injury she caused in the

collision and the aggravation of that injury by Healthsouth. Negligent treatment is thus a successive tort for which the original tortfeasor is jointly liable. *See, e.g., Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003, 1006 (1987) (stating that courts have correctly characterized negligent treatment as a subsequent tort for which the original tortfeasor is jointly liable).

16. Although an original tortfeasor may be held liable for plaintiff's entire harm, a medical care provider who negligently aggravates the plaintiff's initial injuries is not jointly and severally liable for the entire harm, but is liable only for the additional harm caused by the negligent treatment. *Gertz v. Campbell,* 55 Ill.2d 84, 302 N.E.2d 40, 43 (1973); *Gagnon v. Lakes Region Gen. Hosp.,* 123 N.H. 760, 465 A.2d 1221, 1223 (1983) (noting that physicians are not jointly liable with original tortfeasors because physicians' liability "arises solely from their alleged negligent conduct which aggravated the plaintiff's existing injury"); Keeton et al. § 52, at 352. The medical care provider is liable only for the enhanced injury because the total harm is divisible into separate injuries—that which the patient suffered before being treated by the medical care provider and that which was caused by the medical care provider in the course of treatment. In cases involving successive tortfeasors whose separate causal contributions to the plaintiff's harm can be measured, the doctrine of joint and several liability applies only to the enhanced portion of the injury. *See* Keeton et al. § 52, at 352 (discussing distinction between original tortfeasor's liability, which encompasses entire injury, and treating physician's liability, which extends only to negligent treatment); *Restatement (Second) of Torts* § 433A cmt. c.

17. Even though the original tortfeasor may be held liable for both the original and the enhanced injury, *the imposition of entire liability is only temporary.* The original tortfeasor, whose duty is of a different character and who is not in pari delicto with a successive medical care provider with respect to the negligent treatment, can shift through indemnification the responsibility for an enhanced injury. *See Herrero v. Atkinson,* 227 Cal.App.2d 69, 38 Cal.Rptr. 490, 493–94 (1964); *Gertz,* 302 N.E.2d at 43–44; *Hunt v. Ernzen,* 252 N.W.2d 445, 448 (Iowa 1977); *New Milford Bd. of Educ. v. Juliano,* 219 N.J.Super. 182, 530 A.2d 43, 45 (1987); *Musco v. Conte,* 22 A.D.2d 121, 254 N.Y.S.2d 589, 594 (1964); *see also Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re Consolidated Vista Hills Retaining Wall Litigation),* 119 N.M. 542, 545–46, 893 P.2d 438, 441–42 (1995) (discussing circumstances in which traditional indemnification arises between parties not in pari delicto). *But see Transcon Lines v. Barnes,* 17 Ariz. App. 428, 498 P.2d 502, 509 (1972) (holding original tortfeasor had no right to indemnification because it was not an innocent party); *Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35, 42 (1985) (holding original tortfeasor had no right to indemnification because claim properly was for contribution). Thus liability for the enhanced injury may be shifted to the successive tortfeasor alone, regardless of who plaintiff chooses to pursue for damages.[2]

18. *Effect of tort law on law of general releases.* The issue then becomes this: Given that Jaramillo may have been jointly and severally liable for the entire harm suffered by Martin, and given that Healthsouth is a successive rather than a concurrent tortfeasor, what effect does the general release given to Jaramillo have on the liability of Healthsouth? In light of the original tortfeasor's liability for harm caused by negligent medical treatment, a number of courts adopted a traditional rule that a general release of the original tortfeasor bars a subsequent action by the releasor for negligent treatment by a medical care provider. Peter G. Guthrie, Annotation, *Release of One Responsible for Injury as Affecting Liability of Physician or Surgeon for Negligent Treatment of Injury,* 39 A.L.R.3d 260, 266–73 (1971). These courts recognized an exception to the traditional rule when the negli-

2. We are not addressing here, however, the specific right that Jaramillo may have had to indemnification from Healthsouth following Jaramillo's February 1991 settlement of her liability for the injury enhancement at Healthsouth in March 1991.

gence of the medical care provider caused a new injury. *Id.* at 270–73.

■ 19. A significant number of courts have rejected the traditional rule in favor of a modern rule that a general release of an original tortfeasor does not preclude an action by the releasor against a medical care provider for negligent treatment of the injuries caused by the original tortfeasor unless a contrary intention affirmatively appears in the release or the releasor has received from the releasee full compensation in fact for all injuries. *Id.* at 273–79. This modern rule best comports with New Mexico tort law. *See, e.g., Hansen v. Ford Motor Co.,* 120 N.M. 203, 900 P.2d 952 (1995). The traditional rule does not take into account the fact the original tortfeasor is neither subject to liability for contribution to the subsequent tortfeasor nor subject to apportionment of fault in reduction of the successive tortfeasor's responsibility. Similarly, Jaramillo would not be a necessary witness or deponent in Lujan's suit against Healthsouth except incidentally as an unlikely witness to the nature and extent of the original injury for which Healthsouth is not responsible. Therefore, we today reject the traditional rule in favor of the rule that a general release of the original tortfeasor does not as a matter of law release a medical care provider from claims for negligent treatment.

■ 20. *The release at issue here.* Turning to the release at issue here, no one disputes that Lujan released Jaramillo from claims and liability for both the original and enhanced injuries proximately caused by the collision. The release does not specifically discharge successive tortfeasors whose liability for a separate and distinct injury arises from a separate and distinct tort. In addition to releasing Jaramillo, however, the release discharges "any and all other persons ... who together with [Jaramillo] may be jointly or severally liable to [Lujan] ... from any and all claims ... and demands of whatsoever kind or nature ... for damages to [Lujan's] person or property *arising out of an accident on or about January 27, 1990.*" (Emphasis added.)

21. From the quoted language it is apparent that Lujan released claims arising from a specific accident occurring on a specific date. It is true that from the perspective of Jaramillo, her liability for the enhanced injury suffered by Martin and caused by the alleged malpractice of Healthsouth does arise from the January 1990 accident. It is also true that "but for" the accident, Martin would not have been subject to Healthsouth's treatment. Nevertheless, factually, Martin's separate enhanced injury was caused by the alleged negligence of Healthsouth in March 1990, for which injury Healthsouth ultimately would be responsible in its entirety without reduction based on the fault of Jaramillo in the original accident. Thus from the perspective of Healthsouth, the would be "other person," *its liability* for the enhanced injury suffered by Martin *arises solely from its alleged negligence* and not the January 1990 accident.

22. Maryland's highest court considered the effect of very similar release language in *Morgan v. Cohen,* which involved the consolidated cases of two parties injured in separate automobile accidents and subsequently treated by the same physician. 523 A.2d at 1005. The two parties settled with the respective original tortfeasors, each signing a separate release of claims. The specific issue addressed by the court was "[w]hether a general release, executed in settlement of a damage claim against the operator of a motor vehicle whose negligence caused injury, also releases a physician who subsequently treats the injury." *Id.* at 1004.

23. The first release specifically named the operator of the motor vehicle (original tortfeasor) and the operator's insurer and also purported to release " 'all other persons ... of and from any and all claims, [and] damages which the undersigned now has ... or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries ... and the consequences thereof, *resulting or to result from the accident*' of 20 July 1982." *Id.* at 1009 (alteration in original). The second release specifically named the original tortfeasor and also purported to release "all other persons ... from any and all claims [and] damages ... of whatsoever kind or nature,

and particularly on account of ... bodily injuries, known and unknown and which have resulted or may in the future develop, sustained by [the victim] *in consequence of [the] accident....*" *Id.* (first and third alterations in original).

24. Prior to construing the language of these releases, the Maryland court recognized that the operator of a motor vehicle who negligently causes injuries requiring medical treatment and a physician who negligently provides that treatment are successive tortfeasors. *Morgan,* 523 A.2d at 1006. The Court also emphasized that the operator of the motor vehicle could be held liable for the entire harm because of the operation of the doctrine of proximate cause, *id.* at 1005–06, and that at one time the majority rule was that a general release given to the original tortfeasor also released the allegedly negligent physician, *id.* at 1005 n. 3. Against this factual and legal backdrop, the court reversed summary judgments in favor of the physician, holding that the releases were ambiguous. Of particular importance to the court was the use of the phrases "resulting or to result from the accident" and "in consequence of [the] accident." Based on this language, the court stated that "[w]hat are released are claims for injuries 'resulting from' or 'sustained ... in consequence of' specific accidents." *Id.* at 1009.

25. In light of what has been said about Jaramillo's lack of exposure to claims from Healthsouth or to third-party litigation in Lujan's claims against Healthsouth, the language "arising from the January 27, 1990, automobile accident" is, as in *Morgan,* simply insufficient to alert Lujan that Jaramillo was bargaining for the release of Healthsouth in addition to her own release. Further, there is no extrinsic evidence that the parties intended otherwise. Even though it may have been advisable for Lujan to include specific language in the release reserving her claim against Healthsouth, in light of the language

used, it was not incumbent upon her to do so. We hold that Healthsouth does not fall within the category of "other person" liable for injuries arising out of the January 1990 motorcycle accident.

26. *Double recovery.* Because we have held as a matter of law that the general release of Jaramillo did not include Healthsouth, we must address the possibility of double recovery. This possibility arises because, with respect to the enhanced injury, Jaramillo and Healthsouth would be jointly and severally liable for the same damages. Therefore, the effect of Lujan's release is governed by Section 4 of the Uniform Contribution Among Tortfeasors Act. NMSA 1978, § 41-3-4 (Repl.Pamp.1989). Under that Section, "[a] release by the injured person of one joint tortfeasor ... reduces the claim against the *other* tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." *Id.*

27. There is no specification in the Lujan release as to how the consideration paid by Jaramillo is to be divided between the original injury (which does implicate the Act) and the enhanced injury (which does not implicate the Act). In *Sanchez v. Clayton,* 117 N.M. 761, 768, 877 P.2d 567, 574 (1994), we stated that "[t]he plaintiff settling the judgment ... has an obligation to establish what compensatory damages he is foregoing in the settlement if he later wishes to show a right to recover compensatory damages in successive litigation." Applying that principle here, we hold that on remand Lujan will have the burden to show what portion of the $100,000 settlement obtained from Jaramillo reasonably is attributable to the original injury. Absent evidence affirmatively establishing such an amount, the entire $100,000 must be set off against any judgment obtained against Healthsouth.[3]

---

**3.** The symmetry of the law would seem to dictate that, generally speaking, the original tortfeasor(s) would be indispensable parties. To the extent indemnification rights survive, the allocation of the successive tortfeasor's ultimate responsibility for the entirety of the enhanced injury otherwise may leave the successive tortfeasor subject to

inconsistent obligations. *See* SCRA 1986, 1-019(A)(2) (Repl.Pamp.1992) (joinder of persons needed for just adjudication). The fact that a releasee may be brought into subsequent litigation to determine the releasee's *rights* to indemnification does not raise the considerations cited by Healthsouth regarding vexatious and poten-

**430**

28. *Conclusion.* We conclude that the phrase "arising from the January 27, 1990, automobile accident" is unambiguous and does not include Lujan's malpractice claims against Healthsouth. When, as in this case, no articulable theory exists under which the releasee will either be exposed to liability to a third party or be subject to harassment as a litigant, the releasee must use specific language indicating that he or she also is bargaining for the release of another tortfeasor. A releasee may, of course, bargain for the release of a tortfeasor to whom the releasee will not be liable. But if this is the result for which the named releasee bargains, then it is incumbent on that releasee to make this intention very clear in the language of the release.

29. This case also would be reversible under the rebuttable presumption that only specifically designated persons are discharged by a general release. As stated when we recently adopted that presumption in *Hansen*, 120 N.M. at 212, 900 P.2d at 961, however, that rule is applicable only in those cases in which the issue is preserved. The issue was not raised here, and thus we decline to decide this case under that rule.

30. Having held that the trial court erred and that the general release unambiguously barred only those claims against unnamed persons *whose liability arises from negligence that caused the automobile accident* (not some subsequent event), we need not address Lujan's argument that her affidavit established an ambiguity in the terms of the release. The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

31. **IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI and FROST, JJ., concur.

tially costly litigation involving "other persons." We recognize that if the statute of limitations has run on an indemnification claim, then litigation regarding allocation could be vexatious. The problems created by a particular indemnitee's failure to file an indemnification action within the statute of limitations should not, however, be determinative of the principled resolution of the question raised by the erroneous application of *Martinez.*