712 P.2d 1351

**Randal Allen TIPTON,**
**Appellee-Cross-Appellant,**

v.

**TEXACO, INC.,**
**Appellant-Cross-Appellee,**

v.

**X–PERT WELL SERVICE, INC., B.F.**
**Walker, Inc., and Eunice Rental**
**Tool, Inc., Appellees.**

No. 15283.

Supreme Court of New Mexico.

Nov. 25, 1985.

On Rehearing Dec. 10, 1985.

Rehearings Denied Feb. 13, 1986.

R.E. Richards, Law Offices of R.E. Richards, P.A., Hobbs, Sarah M. Singleton, Singleton Law Offices, Santa Fe, for Tipton.

Paul M. Bohannon, Thomas D. Haines, Jr., Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, D. Bruce Pope, Midland, Tex., for Texaco, Inc.

John P. Cusack, Cusack & Associates, Roswell, for X-Pert Well Service.

Larry D. Beall, Albuquerque, for B.F. Walker, Inc.

R.D. Mann, R. Tracy Sprouls, Atwood, Malone, Mann & Turner, P.A., Roswell, for Eunice Rental Tool, Inc.

## OPINION

WALTERS, Justice.

Randall Tipton sued Texaco, Inc. for personal injuries sustained in an accident at an oil well operation. Texaco, the operator of the well, filed a third-party complaint against Tipton's employer, X-Pert Well Service, Inc., and two other independent contractors, B.F. Walker, Inc. and Eunice Rental Tool, Inc., alleging X-Pert's breach of contract and negligence, and negligence of the others. The trial court dismissed Texaco's complaint first against Walker and Eunice, and later against X-Pert. After trial, the jury awarded damages and found Texaco to be 75%, and Tipton to be 25%, negligent. Texaco appeals; Tipton cross-appeals. We reverse.

Texaco hired X-Pert and other independent contractors to perform services at the well location. Tipton was X-Pert's rig operator. On August 15, 1979, Tipton and his crew moved a pulling unit to the well site. They observed unevenly-loaded pipe racks atop a concrete and caliche base, the location of which interfered with their procedure for correctly aligning their unit. Eunice Rental had delivered the racks to the location; Walker had loaded the pipes onto the racks either on August 14th or 15th. In order to direct the unit's placement, Tipton crawled under pipes which overhung the racks and was injured when the rear rack toppled and some of the pipes fell on him.

Tipton sued Texaco in negligence, alleging inadequacy and collapse of the caliche pad upon which the pipes had been racked. As affirmative defenses, Texaco asserted the concurrent negligence of Tipton and of X-Pert, as well as X-Pert's contractual assumption of liability through an indemnity provision in a work agreement between Texaco and X-Pert. Texaco's subsequent third-party complaint against X-Pert, Walker and Eunice, generally alleged negligence against all and breach of contract against X-Pert (failure to protect "all persons" from injury arising out of X-Pert's work).

The trial court dismissed the third-party complaint against Walker and Eunice before trial, and upon successful argument of prematurity by Tipton and the third-party

defendants, Texaco's subsequent appeal of that order of dismissal was stricken from the record. X-Pert then was dismissed as a third-party defendant on the first day of trial. The court denied Texaco's motion to reconsider the dismissals, as well as several similarly-directed motions during and after trial. The jury returned a verdict of $300,000 in total damages, allocating 75% of the negligence against Texaco and finding Tipton 25% comparatively negligent.

Texaco appeals the trial court's rulings with respect to the third-parties, its exclusion of the work agreement between Texaco and X-Pert from evidence, the instruction given on *res ipsa loquitur,* and the court's refusal to instruct the jury to apportion negligence among all five alleged tortfeasors; and further requests that any new trial be limited to the issue of liability. On cross-appeal, Tipton challenges the exclusion of evidence of Texaco's subsequent repairs and the court's refusal to instruct on the duty owed to a business invitee.

## I.

Texaco contends that the dismissal of its third-party complaint against X-Pert, Walker, and Eunice was erroneous, because the negligence of those entities should have been submitted to the jury. These related contentions concern a procedural development resulting from our recently-adopted comparative negligence system which has not yet been addressed in an appellate decision.

In *Scott v. Rizzo,* 96 N.M. 682, 688, 634 P.2d 1234, 1240 (1981), we adopted the comparative negligence doctrine, approving "in toto" the language of the Court of Appeals in the *Claymore* case (consolidated with *Scott*). In discussing revisions of rules, procedures, instructions, and theories of liability that necessarily would be faced in applying the doctrine, that opinion observed:

> The thrust of the comparative negligence doctrine is to accomplish (1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury, and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party. To reach those purposes of the doctrine, we have great faith in the ability of our state's trial judges to sort out any problems that may arise.

*Scott-Claymore* thus expressly anticipated that adaptations of various existing rules would have to be made on a case-by-case basis. Consequently, in *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), the Court of appeals determined that joint and several liability among concurrent tortfeasors is inappropriate in a pure comparative negligence system which stresses apportionment of liability on the basis of fault. The court held there that liability for the entire damage could not be imposed upon the defendant when the jury had determined that a concurrent unknown tortfeasor had caused 70% of the non-negligent plaintiff's damage. Thereafter, the appellate court held in *Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104 (Ct.App.), *cert. quashed,* 100 N.M. 192, 668 P.2d 308 (1983), that the Uniform Contribution Among Tortfeasors Act, NMSA 1978, Sections 41–3–1 to 41–3–8 (Repl.Pamp.1982), no longer had any force in this state with respect to contribution among concurrent tortfeasors.

The use of the third-party complaint as a means of bringing in other alleged tortfeasors is the source of vexation in this suit. NMSA 1978, Civ.P.Rule 14(a) (Repl. Pamp.1980), provides that a defendant may bring in a non-party "who is or may be liable to him for all or part of the plaintiff's claim against him." In the pre-*Scott/Claymore* case of *First National Bank of Santa Fe v. Espinoza,* 95 N.M. 20, 21, 618 P.2d 364, 365 (1980), we observed that Rule 14 contemplates that the third-party be secondarily liable to the original defendant if

the defendant should be held liable to the plaintiff. We said that although a defendant may raise a third-party's *primary* liability to the plaintiff as a defense, he cannot by right bring such a third-party into the lawsuit under the rule. *Id.*

Texaco claims that its third-party complaint sounds in both tort and contract. *Wilson v. Galt; Bartlett v. New Mexico Welding Supply, Inc.* Even though each tortfeasor is responsible only for his respective share of fault, and no right of contribution exists among concurrent tortfeasors in our comparative negligence system, under *Bartlett,* negligence can be allocated to a third party without the participation of the third-party in the suit. Therefore, strict application of Rule 14 would not allow a defendant to bring in third parties merely on the grounds that they are concurrent tortfeasors.

However, we agree with the Court of Appeals that *"Barlett* did not intend such sweeping changes in third-party practice." *Guitard v. Gulf Oil Co.,* 100 N.M. 358, 670 P.2d 969 (Ct.App.), *cert. denied sub nom Harrison Western Corp. v. Gulf Oil Co.,* 100 N.M. 327, 670 P.2d 581 (1983). In *Guitard,* the court reinstated the third-party complaint on the basis of an indemnity agreement between the defendant and the third party.

Tipton argues that Texaco did not sufficiently raise the issue of negligence on the part of either Walker or Eunice to successfully maintain a third-party action on that ground or to obtain a jury instruction on that issue. Tipton urges us to hold that negligence of a third party is an affirmative defense which must be raised in the pleadings. Neither *Bartlett* nor *Wilson* dealt with that question. The *Scott* opinion was purposely very general, trusting the trial courts to tailor the theory of comparative negligence to our legal system: "[W]e have great faith in the ability of our state's trial judges to sort out any problem that may arise." 96 N.M. at 688, 634 P.2d at 1240.

While the concurrent negligence of nonparties might logically be raised as an affirmative defense in a defendant's answer, such negligence is not currently designated by NMSA 1978, Civ.P.Rule 8(c) (Repl.Pamp. 1980), as an affirmative defense that must be pleaded. Subsection (f) of that rule does provide that "[a]ll pleadings shall be so construed as to do substantial justice." But plaintiff and the third-party defendants argued below as they do here that none of the rules of civil procedure precisely fit defendant's claims against third parties, and consequently could not be properly asserted in the lawsuit.

The various pleadings in this case, filed before and between the *Scott* and *Bartlett* decisions, were fashioned with very little direction or example regarding the form of pleading comparative negligence. The impact of abolishing joint and several liability by *Bartlett* upon a third-party action in a negligence case had not yet been addressed by an appellate court. Considering the uncertain state of comparative negligence pleading during that period, Texaco's attempt to bring in the third parties through Rule 14(a) (or any other joinder rule of procedure), without having expressly alleged concurrent negligence of others in its answer, should not have been fatal in itself to the attempt to join those parties or to obtain Texaco's requested jury instruction regarding the apportionment of liability.

Although we have previously identified secondary liability as the type of legal relationship which would foster judicial economy when tried along with the original cause of action, the basic analysis is grounded on the separability of the original and third-party issues. Collateral or independent issues "confuse matters and hinder judicial economy." *First National Bank of Santa Fe v. Espinoza,* 95 N.M. at 21, 618 P.2d at 365. The allocation of negligence between all tortfeasors, and a promise to indemnify one tortfeasor by another obviously are interrelated and dependent issues. Under Rule 14, "a defend-

ant is not bound by the plaintiff's selection of parties." *Guitard,* 100 N.M. at 363, 670 P.2d at 974. But "[t]he purpose of Rule 14 is to facilitate judicial economy...." *First National Bank of Santa Fe v. Espinoza,* 95 N.M. at 21, 618 P.2d at 365 (citing 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1442 (1971)).

*Scott* endeavored to advise in 1981, and we now reiterate, that it will be necessary that the rules of third-party practice and joinder of missing parties, whether those parties be permissive or necessary, be liberally applied when comparative fault or liability of multiple parties surfaces in the pleadings. NMSA 1978, Civ.P.Rule 13(h) (Repl.Pamp.1980), requires the court to allow impleader of parties when their presence is required to grant complete relief in determining counterclaims or cross-claims. The same rule must apply to third-party claims. *Downing v. Dillard,* 55 N.M. 267, 232 P.2d 140 (1951).

■ We would emphasize what Judge Wood pointed out in *Bartlett, i.e.,* that *all* tortfeasors should be joined in the jury's determination of apportionment of damages. If that be so, what valid reason is there to exclude them as parties to the action if they are known, within the court's jurisdiction, and can be served, simply because plaintiff has elected not to join them? Impleading additional defendants to seek affirmative relief, to assure complete disposition, to conserve judicial resources, or to obtain joint tortfeasor contribution has always had a healthy vitality in New Mexico practice. *See, e.g., United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 629 P.2d 231 (1980); *Navajo Freight Lines, Inc. v. Baldonado,* 90 N.M. 264, 562 P.2d 497 (1977); *Williams v. Arcoa International, Inc.,* 86 N.M. 288, 523 P.2d 23, *cert. denied,* 86 N.M. 281, 523 P.2d 16 (1974); *American Insurance Company v. Foutz and Bursum,* 60 N.M. 351, 291 P.2d 1081 (1955). The abolition of contribution and contributory negligence as a complete defense should not also abolish impleader

practice. Accordingly, the rules must be adjusted and made suitable to fit the changes in the substantive law; and a third-party complaint that previously would have been allowed under joint tortfeasor contribution theories must now be allowed, under liberal construction of the rules of procedure, to assert a comparative negligence theory or a breach of contract indemnity claim, in order to assure that each person at fault bears only his proportionate share of liability. *Guitard.*

■ The importance of any pleading "inheres in its effectiveness as a means of accomplishing substantial justice." *Temple Baptist Church, Inc. v. City of Albuquerque,* 98 N.M. 138, 142, 646 P.2d 565, 569 (1982) (citing Rule 8(f)). The procedural objections to the third-party complaints consequently are without merit. We discuss further the third-party complaint against X-Pert, in connection with exclusion of evidence of the contractual relationship between Texaco and X-Pert, in Part III, *infra.*

### II.

Notwithstanding the foregoing discussion, the record unequivocally shows that the trial court dismissed the third-party pleadings, denied Texaco's motions to amend the pleadings to reflect the comparative negligence of all parties and non-parties, and refused Texaco's requested comparative negligence instruction because it was persuaded that, regardless of any contractual agreement or third-party negligence, Texaco was ultimately and solely responsible to provide Tipton with a safe place to work and that the negligence of any of the others would be chargeable to Texaco. It ruled that evidence of Walker's negligent placement of the racks, or Eunice's disordered stacking of the pipes, would be evidence of Texaco's negligence. In effect, the trial court determined that any agreement for indemnity was void, and comparative negligence principles had no

application in this case except as they might exist between plaintiff and Texaco.

In our research on this matter, we have found that landowner-contractor-subcontractor liability cases have frequently contained the terms "general contractor," "owner," "lessor," "lessee" and "employer," used interchangeably, to identify the permanent or temporary possessor of land in the context of the cases. This court has held that an employer's duty to provide a safe work place for employees of independent contractors is not absolute. "We see no reason why the employer should become the insurer of the employees of an independent contractor." *New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 282, 551 P.2d 634, 638 (1976) (no duty where work of independent contractor not controlled by employer of independent contractor). The extent of the duty has been held to vary according to the visibility or obviousness of the potential jobsite hazard and according to the degree of control the general contractor exercises over the premises or over the details of the work. It was said in *Fresquez v. Southwestern Industrial Contractors & Riggers, Inc.*, 89 N.M. 525, 554 P.2d 986 (Ct.App.) *cert. denied*, 90 N.M. 8, 558 P.2d 620 (1976), that a general contractor, who does not retain control of the work premises or of the manner in which a subcontractor's work is performed, is not liable for injuries to the subcontractor's employee which result from an unsafe work place or condition created by the subcontractor.

Neither *Montanez* nor *Fresquez* dealt with a subcontractor's liability for injury to a workman employed by a different subcontractor on the job. In *Baker v. Fryar*, 77 N.M. 257, 421 P.2d 784 (1966), however, Justice Moise undertook to analyze the murky area of whose liability it is for the condition and use of land, and some seeming inconsistencies on that question in case law as well as in the Restatement of Torts. Plaintiff relies here, in arguing Texaco's sole liability to support the trial court's

assignment of all liability to the lessee/owner, upon Restatement (2nd) of Torts §§ 343 and 412. Section 343 imposes liability upon the possessor of land for harm caused by a condition of the land to a business invitee—and it is not argued that Tipton was not a business invitee—if the possessor knows of, or should know of, and does not reasonably protect from, an unreasonable risk of harm, and should expect that the invitee will not discover it and protect himself. Section 412 requires one who hires an independent contractor for maintenance and repair of the land to exercise such care as may be demanded by the circumstances to ascertain whether the land is safe after the independent contractor's work is completed. But the cases and the Restatement are rife with exceptions to the general rules.

In recognizing the "many exceptions," and in discussing a factual situation remarkably similar to the facts of this case, *Baker v. Fryar* modified earlier case law regarding an owner's liability when he knows or discovers a defective condition (or should have), to say that the owner's responsibility *may*, but need not necessarily, supersede the contractor's negligence, citing Restatement § 452 and the comments thereto. *Baker* quoted approvingly from comment (b) under § 452 which, in part, says:

> [T]he failure of the third person [here, the lessee] to act to prevent harm to the other threatened by the original actor's negligent conduct, is not a superseding cause of such harm, and so does not relieve the actor of liability for the harm which he in fact has caused. If the third person is under a duty to the other to take such action, his failure to do so will subject him to liability for his own negligence, which is concurrent with that of the actor, for the resulting harm which he has failed to prevent; but his failure to perform his duty does not relieve the original actor of liability for the results of his own negligence.

The reasoning of *Baker* has been followed in other jurisdictions. In *Talley v. Skelly Oil Company*, 199 Kan. 767, 433 P.2d 425 (1967), the court concisely said, in its syllabus:

2. A building or construction contractor is liable for an injury to a third party resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, where such work is reasonably certain to endanger third persons if negligently done.

3. Rules governing the liability of a general contractor to third persons are equally applicable to a subcontractor.

Likewise, in *Duffy v. Fischbach & Moore, Inc.*, 386 Pa. 533, 538–539, 126 A.2d 413, 416 (1956), the respected Justice Musmanno wrote:

All individual sub-contractors engaged in a common enterprise owe to each other the duty of care required to business visitors.... Section 384, Restatement, Torts [substantially the same as Section 384, Restatement (2nd) of Torts], provides:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to the same liability ... as though he were the possessor of the land, for bodily harm caused to others within and without the land, ... by the dangerous character of the structure or other condition."

The court in *Duffy* affirmed a jury verdict finding both the general and subcontractor liable on the theory of owing "a duty of reasonable care" to provide a work area "devoid of perilous conditions" to the employee of another subcontractor. *Id.*

A power company employee, in *Leatherman v. Schueler Bros., Inc.*, 40 Ill.App.2d 56, 189 N.E.2d 10 (1963), sued a building contractor and its painting subcontractor when he slipped on the top stair of a newly painted stairway and fell to the basement floor. The reviewing court reversed the jury verdict against the general contractor only. Reversal was predicated upon the rule that both the general and independent contractors owed plaintiff the duty to keep the premises reasonably safe for a business invitee, and one could be relieved of liability for injuries arising from a dangerous condition only if the third party's presence were not reasonably foreseeable to that contractor or subcontractor. The court said: "The verdict ... finding liability on the part of the general contractor and no liability on the part of the independent contractor [under facts showing no difference in foreseeability] was fatuous, unrealistic and resulted in an irresponsible placing of loss on one party." *Id.* at 64, 189 N.E.2d at 13.

Judgment against the property owner and his contractor, in favor of an injured business invitee who fell over an unfinished planter box, was upheld by an en banc court in *Chance v. Lawry's, Inc.*, 58 Cal.2d 368, 24 Cal.Rptr. 209, 374 P.2d 185 (1962). Justice Peters, after stating the rule of proprietor Lawry's duty to exercise ordinary care to make an unreasonably risky condition safe for business invitees, wrote of the carpenter-contractor's duty:

[W]here an independent contractor exercises control over the owner's premises, his duty of care toward third persons is commensurate with that of the owner.

. . . .

That [the independent contractor] left the premises by 4:30 every afternoon and had no actual control at the time of ... [the accident] was a factor to be considered by the jury in determining whether [his] conduct was reasonable, but the "responsibility of contractors for defective work does not cease as soon as they leave the premises...." [Citations omitted.]

24 Cal.Rptr. at 213, 215, 374 P.2d at 189, 191.

■ In the instant case, Texaco contended that the racks or pipes, or both, were

improperly placed so as to cause the tipping of the rack, the toppling of the pipes, and the gouge in the caliche pad supporting the racks and piping. Under the cases cited, under Restatement (2d) §§ 384, 384 and 452, and particularly under the comparative negligence doctrine, Texaco's theories should have been submitted to the jury. That is so because, we again emphasize, in our comparative negligence jurisdiction any violation of duty is to be compared with the concurrent negligence of other tortfeasors and liability is to be apportioned accordingly. *Scott v. Rizzo*, 96 N.M. at 688, 634 P.2d at 1240. Such apportionment principles and the analyses of *Baker* and similar cases persuade us that an oil well site operator cannot, without more, be held solely liable regardless of alleged separate or concurrent negligence of its independent contractors.

■ Consequently, the jury in this case should have been instructed to assess the extent of Texaco's control over the site and over the details of Walker's, Eunice Rentals' and X-Pert's work; to consider Texaco's opportunity to inspect and correct a condition left by an independent contractor (if indeed § 412 of the Restatement applies); to judge the obviousness to Tipton of the danger posed by the caliche pad, the pipe racks, or the racked pipe; and to determine the relative negligence of all the parties, including the third parties, in contributing to a defective condition which proximately caused Tipton's injuries. The denial of the third-party pleadings and the refusal to submit any of Texaco's theories to the jury was error. *See Embrey v. Galentin*, 76 N.M. 719, 418 P.2d 62 (1966).

### III.

■ Texaco's indemnity claim against X-Pert was based on language in the work agreement between Texaco and X-Pert, which reads, in relevant part, as follows:

(b) Contractor convenants and agrees to fully defend, protect, indemnify and hold harmless TEXACO, its employes and agents from and against each and every claim, demand or cause of action and any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in defense of TEXACO), damage or loss in connection therewith: (1) which may be made or asserted by Contractor, Contractor's employes or agents, subcontractors, or any third parties (including but not limited to TEXACO's agents, servants, or employes) on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the work hereunder, *except such as may result solely from TEXACO's negligence....* [emphasis added],

and another portion of the agreement requiring X-Pert to "take such measures as may be necessary adequately to protect all persons from injury or loss arising out of [X-Pert's] work...." The trial court ruled those provisions void under NMSA 1978, Section 56–7–2(A), declaring that Texaco's duty to provide a safe work place for Tipton was non-delegable. The court refused to admit the work agreement into evidence.

It has been held that the language of Section 56–7–2(A) that "any agreement which purports to indemnify an indemnitee for injuries or death 'arising from the concurrent negligence of the indemnitee' means only that the indemnitee cannot contract away liability for his own percentage of negligence." *Guitard v. Gulf Oil Co.*, 100 N.M. at 361, 670 P.2d at 972.

Moreover, "when an employer has expressly contracted to indemnify a third-party, the exclusivity provisions of the Workmen's Compensation Act do not relieve the employer of his obligation to indemnify the third party." *Id.* (citing *City of Artesia v. Carter*, 94 N.M. 311, 610 P.2d 198 (Ct.App.) *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980)). "If the employer desires to voluntarily relinquish his statutory protection, he may do so. Such a relinquishment is not

prohibited ... [and] is consistent with the policy favoring the right to contract." *City of Artesia v. Carter*, 94 N.M. at 314, 610 P.2d at 201. *See also Taylor v. Delgarno Transportation, Inc.*, 100 N.M. 138, 667 P.2d 445 (1983), where it was noted that even though an employer is liable to an injured employee only to the extent stated in the New Mexico Workman's Compensation Act, a jury may apportion fault to the employer under the "pure" comparative negligence standard. Determination of such third-party indemnity claims is clearly permitted by Rule 14, *see Board of Education v. Standhardt*, 80 N.M. 543, 547, 458 P.2d 795, 799 (1969); thus, no procedural barrier to joinder exists.

The third-party complaint was proper against X-Pert on the indemnity claim, and the work agreement should have been admitted. The contract provisions relating to the safety responsibilities of each party were relevant to a jury assessment of those factors and to any subsequent apportionment of liability.

## IV.

■ Texaco contends that, because (1) the requisite control did not exist and (2) Tipton's contributory negligence precluded any possible application of the doctrine, a *res ipsa loquitur* instruction could not properly be given. Negligence may be inferred where a party had exclusive control or management of the instrumentality or occurrence which proximately caused the injury or damage, and where the type of injury or damage does not ordinarily occur in the absence of negligence of the person in such control. *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975); *Begay v. Livingston*, 99 N.M. 359, 658 P.2d 434 (Ct. App.1981), *rev'd on other grounds*, 98 N.M. 712, 652 P.2d 734 (1982); NMSA 1978, UJI Civ. 16.23 (Cum.Supp.1985).

■ Texaco argues that Tipton's contributory negligence demonstrates lack of exclusive control. However, "[t]he requisite control is not necessarily the control exercised at the time of the injury but may be control at the time of the negligent act which results in injury." *Harless v. Ewing*, 81 N.M. 541, 544, 469 P.2d 520, 523 (Ct.App.1970) (quoting *Renfro v. J.D. Coggins Co.*, 71 N.M. 310, 378 P.2d 130 (1963)). Just as the relevant time of control may vary, so may several tortfeasors concurrently cause an injury. The mere existence of concurrent negligence does not preclude a particular finding of negligence of one or more tortfeasors through reliance on the *res ipsa loquitur* doctrine. Otherwise,

> we would effectively erect a complete bar to recovery in cases where a plaintiff must rely on *res ipsa loquitur* to establish a prima facie case of negligence. A plaintiff who, by circumstances of the case, had to rely on *res ipsa* and who was only slightly negligent would be barred from recovery since his contributory negligence would deny him application of the *res ipsa loquitur* doctrine. Such a result would be in direct contravention of the concept of comparative negligence.

*Montgomery Elevator Co. v. Gordon*, 619 P.2d 66, 70 (Colo.1980). *See also Emerick v. Raleigh Hills Hospital*, 133 Cal.App.3d 575, 184 Cal.Rptr. 92 (1982); *Cramer v. Mengerhausen*, 275 Or. 223, 550 P.2d 740 (1976).

■ Although we agree that the instruction was erroneously given here, we wish to point out that the existence of negligence on the part of a plaintiff or other party does not automatically rule out the possibility that one of the parties, at some point, possessed the requisite exclusive control of the instrumentality that caused or contributed to the injury. The analysis, from the viewpoint of comparative negligence, focuses on whether a "defendant's inferred negligence was, more probably than not, a cause of the injury ... though plaintiff's [or third-party's] negligent acts or omissions may also have contributed to the injury." *Montgomery Elevator Co. v. Gordon*, 619 P.2d at 70.

**698**

In the instant case, however, inferences of negligence arising from control and injury not otherwise occurring in absence of negligence are unnecessary crutches to reach the issues of negligence. Under the evidence, questions of negligence of several parties were undeniably raised, and reliance on the *res ipsa* doctrine was not plaintiff's only recourse. Consequently, the instruction should not have been given.

## V.

As to Tipton's cross-appeal, there was no abuse of discretion in the exclusion of evidence of subsequent repairs by Texaco, *see Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322 (10th Cir.1983), and no error in refusing a duplicative and possibly confusing instruction on the duty owed by a landowner to a business invitee. *State v. Atchison, Topeka and Santa Fe Railway Co.*, 76 N.M. 587, 417 P.2d 68 (1966).

We reverse and remand for a new trial to be conducted in conformance with this opinion. Additionally, we direct that the new trial be limited to a determination and apportionment of liability. The damage issue was separate, was fully litigated, and was not meaningfully challenged on appeal by any party. *See Cherry v. Stockton*, 75 N.M. 488, 406 P.2d 358 (1965). Tipton's generalized claim of an "inherent link between damages and attribution of fault" is insufficient to merit re-litigation of that issue.

IT IS SO ORDERED.

### ORDER ON REHEARING

The Opinion of the Court, rendered on November 25, 1985, is modified to provide additionally that interest upon the amount of the first jury verdict for damages in favor of plaintiff shall run proportionately against those defendants found liable, from the date of the original judgment for damages.

RIORDAN and STOWERS, JJ., concur.