Mearl Dean **BOWMAN** and Wanda Bowman, **Plaintiffs–Appellants**,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 94–8030.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1995.

George Santini, Cheyenne, WY, for plaintiffs-appellants.

Carol A. Statkus, Assistant United States Attorney (David D. Freudenthal, United States Attorney, and Aleksander D. Radich, Assistant United States Attorney, District of Wyoming, with her on the brief), for Defendant–Appellee.

Before TACHA, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BURRAGE, District Judge.*

---

* Honorable Michael Burrage, District Judge for the Eastern and Northern Districts of Oklahoma, sitting by designation.

McWILLIAMS, Senior Circuit Judge.

Mearl Dean Bowman and his wife, Wanda Bowman, appeal a judgment of the district court granting the motion of the United States for summary judgment and dismissing their claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. We affirm.

On October 25, 1989, John Bowman, Inc. ("JBI") was awarded a government contract for the repair of porches on 156 historic military family housing units located on the F.E. Warren Air Force Base ("Base") in Cheyenne, Wyoming. The United States, the appellee, is the owner and operator of the Base. The parties agree that, under the contract, JBI was an "independent contractor" and not an "employee" of the United States.

Under the terms of the contract, JBI, as the independent contractor, had direct supervisory responsibility over the work to be done and was further charged with responsibility for protecting the lives and health of its employees. The contract also included, by reference, the Federal Acquisition Regulation ("FAR"), "52.236–13 Accident Prevention," mandating compliance with safety standards issued by the Secretary of Labor, and with safety standards included within the United States Army Corps of Engineers Safety & Health Requirements Manual at EM–385–1–1. FAR provided that the contractor protect the lives and health of its employees and maintain an adequate inspection system and take safety precautions. EM–385–1–1 provided that circular saws "shall be equipped with guards that automatically and completely enclose the cutting edges, splitters and anti-kickback devices." The contract also reserved to the United States the right to inspect the job site for compliance with the terms of the contract.

On September 26, 1990, Mearl Bowman (no relation to John Bowman of JBI), a carpenter employed by JBI on the Base project, was attempting to make a beveled cut on a board using JBI's table saw when his right hand got caught in the saw's blade. The table saw's blade guard was not in place at the time of the accident. Bowman's little finger and ring finger on his right hand were severed in the accident and his entire right hand was severely injured, Bowman having undergone seven surgeries in connection with his accident.

By a second amended complaint, the Bowmans asserted claims under the FTCA against the United States, alleging, in essence, that the United States, through its inspectors, either knew, or should have known, that the guard was missing from the table saw when Mearl Bowman cut his hand, and the United States negligently failed to take corrective action, which, if taken, would have prevented the accident.[1] The Bowmans also named as defendants two supervisory employees of JBI. These claims were eventually settled, and the claims were dismissed.

The United States filed its answer and moved to dismiss, or, in the alternative, for summary judgment, and in support thereof attached several affidavits. The Bowmans filed what they characterized as "Plaintiffs' Resistance to Defendant United States of America's Motion to Dismiss or, in the Alternative, for Summary Judgment," with supporting affidavits and depositions. As indicated, the district court, after hearing, granted the motion for summary judgment filed by the United States and entered judgment dismissing the Bowmans' claims. The district court's opinion appears as *Bowman v. United States*, 821 F.Supp. 1442 (D.Wyo.1993).

■ Under the doctrine of sovereign immunity, the United States cannot be sued unless it consents to be sued, and such consent must be unequivocal. *See United States Dep't of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992); *United States v. Nordic Village, Inc.* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). The "consent" relied on by the Bowmans appears at 28 U.S.C. § 1346[2] and reads as follows:

---

1. Wanda Bowman's claim was based on loss of consortium.

2. The "consent" to be sued under § 1346 does not extend to acts of independent contractors or their employees. *Bird v. United States*, 949 F.2d 1079, 1080 (10th Cir.1991).

§ 1346.  United States as defendant

. . . .

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.* (emphasis added).

■ Under 28 U.S.C. § 1346, the Bowmans would have claims against the United States only "if a private person . . . would be liable . . . in accordance with the law of the place where the act or omission occurred," which, in our case, is the State of Wyoming. The Bowmans' position is that even though JBI is an independent contractor, the Bowmans nonetheless have an FTCA claim against the United States because, under Wyoming law, a private person who owns land on which work is to be performed by an independent contractor through the latter's employees is liable for his *own* acts of negligence and that in the instant case inspectors of the United States who inspected the job site on almost a daily basis were negligent. This involves a determination as to whether, in the instant case, the United States owed a duty of reasonable care to the Bowmans, which, in turn, involves the question as to the degree of control or management reserved by the United States in its contract with JBI and its exercise, or non-exercise, of such.

Both parties rely on *Jones v. Chevron,* 718 P.2d 890 (Wyo.1986), the Bowmans contending that under *Jones* they have an FTCA claim against the United States, with the United States asserting that *Jones* dictates the conclusion that the United States had no duty to the Bowmans and that accordingly the Bowmans have no FTCA claims against the United States.

*Jones* involved an employee of an independent contractor who was injured while performing work on some electric lines owned by Chevron. The district court granted summary judgment in favor of Chevron, finding that Chevron owed no duty of reasonable care to the injured worker. On appeal, the Wyoming Supreme Court reversed in part and affirmed in part. In so doing, the Wyoming Supreme Court recognized that "[a]n owner is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform." *Id.* at 894. However, in this regard, the Court went on to state that rule was inapplicable "when the owner maintains control over the hazard that causes the harm." *Id.* at 895.

On the question of the control, or degree of control, retained by an owner over the work to be performed by an independent contractor, the Wyoming Supreme Court spoke, at length, as follows:

'To determine whether the nature and extent of the control present is sufficient to impose liability, both the contractual provisions and the actual exercise of control are relevant. If the employer reserves and exercises only the right to inspect the construction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject it to liability. Similarly, if the employer retains only [the right to require that the contractor observe safety rules and practices] but assumes *no* affirmative duties and never directs the method of performance, there is insufficient control or supervision to render it liable.

On the other hand, if the employer retains the right to direct the manner of the independent contractor's performance, or assumes affirmative duties with respect to safety, the employer has retained sufficient control to be held liable if he exercises that control negligently. (Citations omitted and emphasis added.)'

*Id.* at 896 (alteration in original) (citing *Moloso v. State,* 644 P.2d 205, 211–12 (1982)).

We hold that an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform.

*Jones v. Chevron,* 718 P.2d at 896.

In *Jones,* the Wyoming Supreme Court, in reversing in part, held that the owner, Chevron, did owe a duty to exercise reasonable care to the injured employee, because in the contract Chevron reserved to itself the right to determine when and whether a particular power line should be de-energized. The employee in *Jones* was injured while working on a power line which had not been de-energized.

In support of its motion for summary judgment, the United States submitted, *inter alia,* the affidavit of Sgt. Michael P. Gaughen, United States Air Force. From that affidavit we learn that Sgt. Gaughen was a construction contract inspector assigned to inspect the work performed by JBI at the Base under the contract here involved to insure compliance with the specifications, drawings and requirements of the contract. Sgt. Gaughen, in that same affidavit, went on to state that he learned of Mearl Bowman's accident shortly after its occurrence and that he "did not see or have personal knowledge of the safety guard being removed at any time prior to Mearl Dean Bowman's injury nor was I aware of any other injuries to John Bowman, Inc. employees resulting from use of the particular saw which injured Mearl Dean Bowman."

In resisting the motion for summary judgment, the Bowmans submitted, *inter alia,* the affidavit of Mearl Dean Bowman. In that affidavit, Bowman stated that Sgt. Gaughen made regular inspections of the work site and that Bowman "believed that Sgt. Mike Gaughen was a safety inspector and knew there was no safety guard on the table saw."

The Bowmans in this Court emphasize that they are not seeking to assert an FTCA claim against the United States based on vicarious liability, i.e. the United States is liable for the negligence of JBI, but rather their claims are based on the negligence of employees of the United States, principally Sgt. Gaughen. Following up, the Bowmans argue, by way of example, that the affidavits of Sgt. Gaughen and Mearl Dean Bowman demonstrate there was a genuine issue as to a material fact that precludes summary judgment under Fed.R.Civ.P. 56(c). This argument, in our view, misses the mark. Any difference between the affidavits of Sgt. Gaughen and Mearl Dean Bowman does not pertain to a *material* fact.

The starting point in our analysis of the matter is the general rule that since JBI is an independent contractor and not an employee of the United States, the latter is not responsible for the negligence of JBI or its employees. *See United States v. Page,* 350 F.2d 28, 30–31 (10th Cir.1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). The fact that under the contract the United States reserved the right to make on-site inspections to insure compliance with all the terms and provisions of the contract, and did, in fact, make such inspections, does not change the result. Under *Jones,* it is only "if the employer retains the right to direct the manner of the independent contractor's performance, or assumes affirmative duties with respect to safety, [that] the employer has retained sufficient control to be held liable if he exercises that control negligently." *Jones v. Chevron,* 718 P.2d at 896 (citing *Moloso v. State,* 644 P.2d 205, 211–12 (Alaska 1982)). In this regard, we conclude, as did the district court, that the United States did not retain the right to control and manage the details of JBI's work performance nor did it assume affirmative duties with respect to safety.

We believe our analysis of the present case is in accord with a Wyoming case decided after *Jones. See Ramsey v. Pacific Power and Light,* 792 P.2d 1385 (Wyo.1990). There the Wyoming Supreme Court affirmed a summary judgment for a land owner, Pacific Power and Light ("PP & L"), when sued by an injured employee of an independent contractor, NESCO, under contract with the land owner. One theory of the injured em-

ployee for recovery was that PP & L, the landowner, through its safety coordinator, exercised "control over the work site at the time of the injury." In his deposition, PP & L's safety coordinator stated that he had responsibility to coordinate safety programs at the plant for PP & L employees; that he would make contractors aware of special safety policies when they began work at the plant; and that if he observed a safety deficiency in connection with the contractor's work, he would notify one of the contractor's supervisors of it and see that the deficiency was corrected. In this regard, the Wyoming Supreme Court held that such statements "fall far short of that set out in Comment (c) to § 414 Restatement (Second) of Torts, ... as necessary to retain control of the work place."[3] *Id.* at 1388.

We also believe that our analysis of the instant case is in accord with the rationale of prior Tenth Circuit cases considering the matter, although those cases did not involve Wyoming law. In *United States v. Page,* 350 F.2d 28 (10th Cir.1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966), an action was brought under FTCA against the United States for damages resulting from the death of an employee of an independent contractor under contract with the United States. The district court, after trial, found for the plaintiffs and the United States appealed. The basis for the district court's resolution of the matter was that the United States owed a duty to the decedent because under the contract the United States reserved the right to prescribe safety regulations in addition to those in the contract and also reserved the right to inspect the contractor's plant and work performed therein. In reversing, we spoke as follows:

The fact that the contract may have reserved to the United States the right to inspect the work and facilities of the independent contractor, and the right to stop the work, does not in itself override or alter the general rule of non-liability for the torts of the contractor because no duty is created to employees or third parties. This includes the reservation to inspect for the adherence to contract safety provisions. (citation omitted).... The fact that the work and duties of the independent contractor and of his employees originate in a contract, in plans, or regulations issued by the Government does not create a duty by it to the employees where there was not such an affirmative control and direction by Government officials over the employees or interference in the work of the contractor as to create conditions where there was in fact no independent contractor....

Could it be that the United States is liable because although it may not have a duty, it undertook to administer a safety program and thereby became liable for its negligence in carrying it out? (citations omitted).... Hercules [the independent contractor] had the primary responsibility for the safety of its employees; it had the direct control and supervision over them, and they were working in its plant. Further, it had the duty to perform and supervise the individual functions, the total of which produced the end product. The function the decedent was performing was but one of many of these in this chain of production. It and the safety of those then working was under the exclusive control and supervision of Hercules. The

---

**3.** Restatement (Second) of Torts, § 414 (1977):
One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
Comment (c):
In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that

he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work his own way.

safety program of the Government did not constitute an exercise of any such control.

*Id.* at 30–31.

In *Flynn v. United States,* 631 F.2d 678 (10th Cir.1980), an employee of an independent contractor made claim against the United States under FTCA and he appealed a judgment of the district court in favor of the United States. In affirming, we held that since the United States did not control the "physical performance of the contractor," it could not be held liable under the FTCA. *Id.* at 681. In *Flynn,* the injured employee also sought to hold the United States liable because of an Air Force safety program which was not enforced. In rejecting that particular argument, we spoke as follows:

> Plaintiff contends that under the contract the United States had the right to inspect the work of Dynalectron [the independent contractor] to determine whether Dynalectron was enforcing Air Force safety regulations. Plaintiff says that the safety program was not enforced. *The existence of a safety program does not create liability when the contractor, as here, is primarily responsible for safety.* (emphasis added).

*Id.*

Judgment affirmed.