**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 10/4/96**

**TENTH CIRCUIT**

_____

| | | |
|---|---|---|
| DONALD CURRY and ALMA ORTIZ, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 95-2122 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOE R. ROYBAL, d/b/a | ) | |
| ROYBAL'S FORESTRY PRODUCTS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**Appeal from the United States District Court
for the District of New Mexico
(No. CIV-93-0863 JP)**

_____

Roberto C. Armijo of Civerolo, Wolf, Gralow & Hill, Albuquerque, New Mexico, for Plaintiffs-Appellants.

John W. Zavitz, Assistant United States Attorney (John J. Kelly, United States Attorney on the brief), Albuquerque, New Mexico, for the Defendant-Appellee.

_____

**Before KELLY, ENGEL,[*] and LOGAN, Circuit Judges.**

_____

**ENGEL, Circuit Judge.**

_____

Plaintiffs Donald Curry and Alma Ortiz appeal the district court's judgment for the United States in their suit against the United States and Joe Roybal arising from an accident involving the plaintiffs and Roybal. The plaintiffs' claim against the United States is based on the theory that Roybal was an employee of the United States Forest Service ("USFS"). The district court held that Roybal was not an employee of the USFS and entered final judgment for the United States. We affirm.

## I.

The accident occurred when the plaintiffs, husband and wife, were on a motorcycle on a New Mexico state road in the Santa Fe National Forest. Roybal was operating a road grader on the same road, driving from one job site to another for work he was doing pursuant to a contract with the USFS. As the motorcycle and the grader approached each other from opposite directions on the narrow road, Curry stopped the motorcycle. The plaintiffs alleged that the grader failed to stop or slow down and caused the motorcycle to tip over, which in turn caused Ortiz to fall off the motorcycle and into the path of the rear wheels of the grader.

---

[*] The Honorable Albert J. Engel, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

2

Ortiz sued for physical damages, and Curry sued for damages resulting from severe emotional distress.

The district court determined that the issue of the government's potential liability should be determined before any proceedings on the merits of the case. The court held a one-day bench trial on this issue and decided that the United States could not be liable because Roybal was an independent contractor, not a federal employee. This appeal concerns only that determination; we do not address any aspect of the plaintiffs' claims against Roybal.

The USFS hired Roybal to maintain and grade a 99.2-mile section of road. It has regular employees who do this kind of work, but it sometimes hires outside people as well. Roybal was not a licensed road-grader, but the USFS did not require him to be. Most of the work he did was for the USFS, under various discrete contracts, but he occasionally did private jobs as well. His work for the USFS always was the result of a competitive bidding process: the USFS would solicit bids and choose the lowest one. In this particular instance, Roybal's bid of $150 per mile for the 99.2-mile section was the lowest of three bids.

A description of exactly what the job entailed was set forth in a detailed contract or "purchase order." Roybal was to grade the 99.2-mile stretch of road and also perform maintenance work such as "pulling ditches," cleaning culverts and ditches, and removing brush. The contract provided that "[a]ll work shall be performed in accordance with these specifications and in conformity with the attached drawings," and that the USFS would conduct periodic inspections to verify compliance.

3

Roybal did not receive a salary under this contract; rather, he periodically billed the USFS for the work he had completed, usually every two weeks. He had several employees, and he was fully in charge of hiring and firing them, paying their salaries, and paying the necessary taxes. Under the contract, Roybal was allowed to hire subcontractors, but only with the USFS's approval. He used his own road-grading equipment, which complied with the contract's specifications about size and quality.

Joe Cordova represented the USFS as a "COR" (contracting officer's representative). Cordova was in charge of monitoring Roybal's performance as set out in a "Handbook" published by the USFS. According to the Handbook,

> All dealings with the contractor must be timely so that the Government maintains control of the work and the contractor is not subjected to unnecessary and costly rework. Faulty and substandard work must be promptly rejected since failure to do so could imply acceptance.

Cordova's responsibilities included making payments to Roybal, issuing orders to suspend or resume work, and maintaining a daily diary. In the diary, Cordova recorded the work done, the payments made, and any problems encountered. For example, Cordova described in the diary several instances when he told Roybal that a certain portion of the grading work would not be approved until the area was cleaned properly. Pedro Aragon was an inspector for the USFS. He visited Roybal's worksite many times and gave specific orders such as to remove certain debris or to go back and finish cleaning certain areas, making sure that Roybal complied with the contract's specifications.

4

Although USFS officials such as Cordova and Aragon had some general supervisory authority to make sure that Roybal's performance conformed with the contract specifications, they did not otherwise tell Roybal how or when to do his work. They did not tell Roybal whom to hire or how to operate his equipment. As far as safety and insurance, Roybal understood that he was responsible for public safety, although he did not have liability insurance. Roybal thought of Cordova as his "boss," since Cordova had the power to terminate the contract, but Roybal did not consider himself to be a USFS employee.

## II.

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity that allows the United States to be sued for damages arising from torts committed by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). "Employees" of the government include officers and employees of federal agencies; "federal agencies" do not include contractors. *Id.* § 2671. The FTCA does not authorize suits based on the acts of independent contractors or their employees. *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Logue v. United States*, 412 U.S. 521, 527 (1973).

This appeal turns on the distinction between federal employees and independent contractors. The Supreme Court has held that the power of the federal government "to control the detailed physical performance of the contractor" is the critical factor in making this distinction. *Logue*, 412 U.S. at 528. In applying this test, we focus on "whether the Government supervises the day-to-day operations of the individual." *Lurch v. United States*,

5

719 F.2d 333, 337 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984). In answering this question, we consider seven factors:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses h[is] own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

*Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989) (citing *Norton v. Murphy*, 661 F.2d 882, 884-85 (10th Cir. 1981)).

The district court followed the above analysis and concluded that Roybal was an independent contractor rather than a USFS employee. We review the findings of fact underlying the district court's decision only for clear error. *Lurch*, 719 F.2d at 338. The conclusion that Roybal was an independent contractor, however, is a legal one and is reviewed de novo. *Lilly*, 876 F.2d at 857.

The plaintiffs argue that the USFS had sufficient control over Roybal's day-to-day operations and the physical details of his work to make Roybal an employee. The United States argues that the USFS monitored Roybal's work only to the extent necessary to ensure compliance with the contract. The plaintiffs recognize that under *Flynn v. United States*, 631 F.2d 678, 680 (10th Cir. 1980), the right of the government to inspect work for compliance with a contract does not automatically make the worker an employee, but they claim that the "mosaic" of evidence showed that the USFS retained such a high degree of control over Roybal as to make him an employee under the FTCA.

6

Upon examination of the facts of this case, we do not find that the district court erred in concluding that Roybal was an independent contractor for the purpose of the FTCA. Whether viewed as a group of discrete facts or, as urged by the plaintiffs, as an overall "mosaic," the evidence reveals the same picture: Roybal was an independent contractor who did some work for private parties and, when he succeeded in the competitive bidding process, did some work for the government. The USFS monitored his activities to the extent necessary to ensure that the desired results were achieved, but it otherwise gave Roybal discretion in choosing how to perform the contract. The district court properly analyzed the facts in light of the factors listed above, and we affirm on the basis of its opinion.

We note further that the plaintiffs' argument that this case is similar to *United States v. Becker*, 378 F.2d 319 (9th Cir. 1967), is misguided. In *Becker*, the Ninth Circuit affirmed a finding that a pilot hired by the USFS to fly reconnaissance missions over a forest fire was a USFS employee for the purpose of the FTCA because he was subject to detailed regulations and inspections. Unlike Roybal, the pilot was paid by the hour and was told "when and where to go and what to do." *Id.* at 322-23. These facts distinguish the case from the one at bar; furthermore, the Ninth Circuit subsequently recognized that under the Supreme Court holdings in *Logue* and *Orleans*, detailed regulations and inspections are not in and of themselves evidence of an employer-employee relationship. *Letnes v. United States*, 820 F.2d 1517, 1518-19 (9th Cir. 1987).

7

In fact, the detailed nature of Roybal's contract with the USFS is consistent with the finding that Roybal was an independent contractor. In *Norton v. Murphy*, 661 F.2d 882 (10th Cir. 1981), we reviewed a district court's finding that a person who contracted with the United States Post Office Department to deliver mail on certain routes was not an employee under the FTCA. In affirming this decision, we noted that

> the very length and detail of the contract . . . suggests, to us, an independent contractor relationship between the parties. To us it is doubtful that a master-servant relationship, where the master tells the servant what to do and when to do it, would require a contract of the type here involved.

*Id.* at 884. The USFS exercised considerable control over Roybal to the extent that the contract was very detailed and specific, but it did not supervise Roybal's day-to-day operations in a way that made him an employee.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.