F I L E D
United States Court of Appeals
Tenth Circuit

DEC 9 2002

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JENNIFER McDANIEL, individually and
as personal representative of the Estate of
Robert McDaniel, deceased, and as parent
and next friend of Natasha, Cody and
Shayna McDaniel,

      Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 02-2037
D.C. No. CIV-00-959 LFG/KBM
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

This case arises from the death of Robert McDaniel (McDaniel) at Kirtland Air

Force Base (Kirtland) in New Mexico. Jennifer McDaniel (plaintiff) brought suit against

the United States pursuant to the Federal Torts Claims Act (FTCA), 28 U.S.C.

§§ 1346(b), 2671-2680. Plaintiff filed suit on her own behalf as McDaniel's wife, on

behalf of his estate, and as parent and next friend of the couple's three children. The

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

district court entered summary judgment in favor of the United States and plaintiff appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

In July 1994, the United States Air Force, as required by Federal Acquisition Regulations, published an advertisement soliciting bids for a proposed re-roofing project at Kirtland. The advertisement described the work as "replacement of existing flat roofs on commercial facilities." Aplt. App. at 233. In November 1994, Brazos Roofing International of South Dakota, Inc. (Brazos) was awarded a three-year contract for the work. In September 1996, the contract was modified to include replacement of the barrel-shaped roof on Building 37506.

McDaniel, a seasoned roofer and a long-time employee of Brazos, was the superintendent on the contract. In November 1996, he fell off the roof of Building 37506. He died the next day as a result of that fall. McDaniel was not using any safety equipment at the time of the fall.

Both Brazos and the Air Force were on notice prior to the fatal accident that Brazos was not using an adequate fall protection system on Building 37506. Less than a month before the accident, the Air Force had requested that Brazos install roof safety anchors to Building 37506 to comply with safety standards. In addition, both an Air Force safety officer and an independent safety consultant hired by the Air Force notified McDaniel of the inadequacy of the fall protection system on the building. Despite these

warnings, Brazos did not implement a proper fall safety protection system because its insurance company advised that "because of liability [Brazos] cannot install permanent safety anchors." Aplt. App. at 104.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

## III.

Plaintiff argues the district court erred in holding that the independent contractor exception applied to this case. Specifically, plaintiff argues that Brazos was not an independent contractor and the Air Force could be held liable for Brazos' negligence.

"Under the doctrine of sovereign immunity, the United States cannot be sued unless it consents to be sued, and such consent must be unequivocal." Bowman v. United States, 65 F.3d 856, 857 (10th Cir. 1995). The FTCA, 28 U.S.C. § 1346(b), "provides a

-3-

limited waiver of sovereign immunity that allows the United States to be sued for damages arising from torts committed by government employees acting within the scope of their employment." Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1996). Employees of the government include "officers or employees of any federal agency," but do not include "any contractor with the United States." 28 U.S.C. § 2671. Thus, the FTCA "does not authorize suits based on the acts of independent contractors or their employees." Curry, 97 F.3d at 414.

The power of the federal government "to control the detailed physical performance of the contractor" is the critical factor in determining whether the independent contractor exception applies. Logue v. United States, 412 U.S. 521, 528 (1973). "In applying this test, we focus on whether the Government supervises the day-to-day operations of the individual." Curry, 97 F.3d at 414 (internal quotations omitted). Seven factors are considered in making this determination:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses h[is] own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Id. (quoting Lilly v. Fieldstone, 876 F.2d 857, 859 (10th Cir. 1989)).

Here, there is no question that Brazos was an independent contractor. Under the contract, Brazos was responsible for hiring, supervising and compensating its employees

-4-

in accordance with all applicable state and federal laws. Brazos was responsible for maintaining workers' compensation insurance, bodily injury liability insurance, and comprehensive automobile liability coverage for its employees. In addition, under the terms of the contract, Brazos was responsible for complying with all applicable safety and health laws and regulations. Indeed, Brazos had a safety policy that was designed to comply with state and federal laws and regulations pertaining to the roofing industry. Under Brazos' policy, it was McDaniel's responsibility to ensure the safety program was implemented. Brazos also retained the authority to subcontract to others.

Although Air Force personnel were occasionally onsite, they did not control the detailed physical performance of Brazos. The only Air Force officer who was regularly onsite was Jesse James, a quality assurance evaluator. James would monitor Brazos to ensure that it complied with the contract, but was "not there to tell or instruct the contractor how to do his job" or "to determine how safe the contractor [was]." Aplt. App. at 141, 145.

Plaintiff argues that Brazos and the Air Force had "joint responsibility" over the safety of Building 37506. To support her argument, plaintiff cites the Air Force's authority to monitor and correct safety problems. For example, under the contract, the contracting officer for the Air Force had the authority to stop all or part of the work to correct any conditions that posed a risk to the public or to government personnel. Id. at 240; see 48 C.F.R. § 52.236-13. However,

> [t]he fact that the contract may have reserved to the United States the right to inspect the work and facilities of the independent contractor, and the right to stop the work, does not in itself override or alter the general rule of non-liability for the torts of the contractor because no duty is created to employees or third parties. This includes the reservation to inspect for the adherence to contract safety provisions.

United States v. Page, 350 F.2d 28, 30-31 (10th Cir. 1965) (holding independent contractor exception applied even though contractor was required to comply with specific safety requirements and an Air Force safety engineer monitored contractor's performance); see also Craghead v. United States, 423 F.2d 664 (10th Cir. 1970) (same); Eutsler v. United States, 376 F.2d 634 (10th Cir. 1967) (same).

Plaintiff also contends that the Air Force controlled Brazos' work through Daniel Applegarth, a representative of the roofing manufacturer who monitored installation of the roof. This argument is without merit because Applegarth was neither a government employee nor at the site on behalf of the government. We conclude Brazos was an independent contractor and the United States cannot be held liable for its negligence.

IV.

In addition to the vicarious liability claim, plaintiff brought a claim against the United States based on its *own* acts of negligence. Under the FTCA, a plaintiff has a claim against the United States only "if a private person . . . would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the alleged acts and omissions occurred in New Mexico, its law controls plaintiff's negligence claim. Plaintiff contends that under New Mexico law,

she has a negligence claim against the United States based on (1) the Air Force's duty as a landowner; (2) the Air Force's duty to exercise reasonable care under Restatement (Second) of Torts § 414 (negligence in exercising control retained by employer); (3) the Air Force's non-delegable duty based on the inherently dangerous nature of the work; and (4) the Air Force's duty to hire a competent contractor to perform the work on Building 37506.

*Duty as landowner*

Under Restatement (Second) of Torts § 343, the Air Force had a duty to provide a safe work place for Brazos' employees. Tipton v. Texaco, Inc., 712 P.2d 1351, 1356 (N.M. 1986); Requarth v. Brophy, 801 P.2d 121, 124 (N.M. Ct. App. 1990). However, in order to prevail under § 343, plaintiff must show that the Air Force "should have expected that the employee would not discover or realize the danger, or would fail to protect himself against it." Requarth, 801 P.2d at 124-25; see also Restatement (Second) of Torts § 343(b) (1965). Because it is undisputed that Brazos and McDaniel knew about the dangers of working on Building 37506 and were aware of the inadequate fall protection system, and because Brazos and McDaniel were responsible for the safety of Brazos' employees and were required to comply with applicable safety laws and regulations, plaintiff's claim under § 343 fails. Indeed, after the fatal accident, OSHA conducted an investigation and cited Brazos for failure to comply with applicable safety

standards, including failure to implement a proper fall protection system on Building 37506.

*Duty to exercise reasonable care*

Plaintiff argues the Air Force violated Restatement (Second) of Torts § 414 by failing to reasonably supervise Brazos' work. Specifically, plaintiff argues that the Air Force retained control over the job site and had a duty to remedy any safety hazards, yet failed to take such action despite knowledge of the inadequate fall protection system.

In New Mexico, the general rule is that an "employer of an independent contractor is not liable for injuries to an employee of the independent contractor." Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1262 (N.M. 1987). However, under § 414, if the employer of the independent contractor "has the right to, and does, retain control of the work performed by the independent contractor, [it] owes the duty of care to the independent contractor's employee which, if breached, can result in liability to the employee." Id. In order for § 414 to apply,

> the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*

-8-

Restatement (Second) of Torts § 414 cmt. c (1965) (emphasis added). Thus, the right to stop the contractor "from proceeding with the work if dangerous practices are observed, does not carry with it liability to the employees of the very same [contractor] causing the dangerous condition." Fresquez v. Southwestern Indus. Contractors & Riggers, Inc., 554 P.2d 986, 993 (N.M. Ct. App. 1976); see also Flynn v. United States, 631 F.2d 678, 680-81 (10th Cir. 1980) (holding that the "general right to inspect and make safety requirements is not enough" and that the "existence of a safety program does not create liability when the contractor . . . is primarily responsible for safety") (applying New Mexico law).

Here, although the Air Force generally supervised the progress of the work and retained the authority to stop the work, the Air Force did "not . . . tell or instruct the contractor how to do his job." Aplt. App. at 141. Brazos was responsible for supervising its employees and was responsible for the safety of its employees. Thus, the Air Force did not retain sufficient control over Brazos to create a duty of care owed to Brazos' employees.

*Non-delegable duty*

Plaintiff also argues the Air Force owed a non-delegable duty to Brazos' employees because of the inherently dangerous nature of the work. However, under New

Mexico law, a non-delegable duty based on the inherently dangerous nature of the work does not run from the employer of an independent contractor to the independent contractor's employees. See New Mexico Elec. Serv. Co. v. Montanez, 551 P.2d 634, 637 (N.M. 1976); see also Fresquez, 554 P.2d at 990 (holding duties created by Restatement (Second) of Torts §§ 413, 416, and 427 are not applicable to employees of independent contractors); Bramer v. United States, 595 F.2d 1141, 1146 (9th Cir. 1979) ("We conclude that New Mexico law would not impose upon the government a nondelegable duty running to [the employee of an independent contractor]."). Thus, the Air Force did not owe McDaniel's a non-delegable duty.

*Negligent hiring*

Finally, plaintiff argues the Air Force was negligent in hiring Brazos to replace the roof on Building 37506. Under New Mexico law, the employer of an independent contractor is not liable to the independent contractor's employees for negligently hiring the contractor. See Valdez, 734 P.2d at 1263 (holding that a contractor cannot be held liable to employee of subcontractor for contractor's alleged negligence in hiring subcontractor). Accordingly, plaintiff's negligent hiring claim fails.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-10-